UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TROY LEBEAU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) C.A. No. 1:17-cv-00329 |
| | ) |
| U.S. BANK N.A. AS TRUSTEE FOR | ) |
| CITIGROUP MORTGAGE LOAN | ) |
| TRUST INC. 2006-NC2 ASSET | ) |
| BACKED PASS THROUGH | ) |
| CERTIFICATES SERIES 2006-NC2 and | ) |
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants U.S. Bank N.A. as Trustee for Citigroup Mortgage Loan Trust Inc. 2006-NC2 Asset Backed Pass Through Certificates Series 2006-NC2 ("U.S. Bank, as Trustee") and Wells Fargo Bank, N.A. ("Wells Fargo" and collectively with U.S. Bank, as Trustee "Defendants"), submit this memorandum in support of their motion to dismiss the Amended Complaint filed by Plaintiff Troy LeBeau ("Plaintiff") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of their motion, Defendants also incorporate by reference the arguments raised in their motion to dismiss brief ("First Motion to Dismiss") to the extent that they still apply to Plaintiff's new claims [DN 4-1].[1]

## INTRODUCTION

Recognizing that the claims asserted in the original Complaint are barred by res judicata based upon Plaintiff's failed 2011 Providence Superior Court case (the "State Court Case"),

---

[1] Plaintiff did not oppose Defendants' First Motion to Dismiss.

Plaintiff filed the Amended Complaint, including new claims/theories, which is also fail. Plaintiff continues to rely upon the same breach of contract claims and good faith and fair dealing theories that are barred by res judicata, but his newly contrived theories fare no better. Specifically, the proposed Amended Complaint includes a dual tracking claim under the Real Estate Settlement Procedures Act ("RESPA") (Count I).  This claim fails because Wells Fargo did not dual track and there has been no foreclosure sale.  Plaintiff's claim for failure to correct a noticed error under Regulation X (Count II) fails because Wells Fargo timely and sufficiently addressed the perceived error.  Plaintiff's Truth in Lending Act ("TILA") claim for allegedly failing to send monthly mortgage statements (Count III) fails because Wells Fargo was not required to send statements where Plaintiff's obligation under the mortgage loan was discharged in bankruptcy.  Finally, Plaintiff's hodge-podge, catch-all, contract-based claims regarding mortgage notices, loan payment application, and mortgage assignments (Count IV) all fail for res judicata, and other grounds.

Despite Plaintiff's efforts to plead around the res judicata effect of State Court Case as briefed in Defendants' First Motion to Dismiss, Plaintiff still fails to assert claims that can withstand a motion to dismiss.  As more fully described below, each new claim in the Amended Complaint and the repackaged claims from the Complaint fail as a matter of law.  Accordingly, the Court should dismiss the Amended Complaint with prejudice.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff owns 36 Black Plain Road, North Smithfield, Rhode Island (the "Property"). See Am. Compl., ¶ 1.  On July 17, 2006, Plaintiff executed a note (the "Note") and obtained a loan from New Century Mortgage Corporation ("New Century") in the principal amount of

---

[2] For purposes of this motion only Defendants accept as true the factual allegations of the Amended Complaint. Defendants, however, reserve their right to challenge those allegations at a later date.

$300,000.00 (the "Loan").  See Am. Compl., ¶ 2; Affidavit of Andrea Kruse in Support of State Court Summary Judgment Motion ("Kruse Affidavit"), ¶ 3.[3, 4]  To secure the Loan, Plaintiff granted a mortgage (the "Mortgage") on the Property in favor of New Century.  See Am. Compl., ¶ 2; Mortgage.[5]  The Mortgage specifies that any notice to Plaintiff in connection with the Mortgage, "shall be deemed to have been given to [Plaintiff] when mailed by first class mail . . ."  See Mortgage, ¶ 15.  The Mortgage also specifies that before the lender can accelerate the debt on the Loan, it must give notice to Plaintiff of his right to cure any default on the Loan.  See Mortgage, ¶ 22; Am. Compl., ¶¶ 11-12.

On February 25, 2009, Wells Fargo, as attorney-in-fact for New Century, assigned the Mortgage (the "Assignment") to U.S. Bank, as Trustee, using the name U.S. Bank National Association, as Trustee for Asset-Backed Pass-Through Certificates, Series 2006-NC2.  See Assignment.[6]  Although the Assignment omitted the complete name of the trust, it correctly identified, U.S. Bank, as Trustee, which has been the mortgagee, at all relevant times, and the correct trust series.  Plaintiff defaulted on the Loan by failing to make monthly payments.  See Kruse Affidavit, ¶ 10.  As servicer for U.S. Bank, as Trustee, Wells Fargo sent notice of right to cure correspondence dated July 18, 2010 (the "Notice of Right to Cure") to Plaintiff advising that the Loan was in default and providing the notice required by Paragraph 22 of the Mortgage.  See Kruse Affidavit, ¶ 3; Supplemental Affidavit of Alissa Doepp in Support of State Court

---

[3] A copy of the Kruse Affidavit is attached to the First Motion to Dismiss as Exhibit 1.

[4] The Court may consider matters of public record, including documents from prior adjudications in resolving a Rule 12(b)(6) motion to dismiss.  See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (citing In re Colonial Mortgage, 324 F.3d 12, 15–16 (1st Cir. 2003); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir.2000)).

[5] A copy of the Mortgage is attached to the First Motion to Dismiss as Exhibit 1-A.

[6] A copy of the Assignment is attached to the First Motion to Dismiss as Exhibit 1-C.

Summary Judgment Motion ("Doepp Affidavit"), ¶ 6;[7] Notice of Right to Cure.[8]  After Plaintiff failed to cure the default, a duly noticed foreclosure sale was held in the name of the original mortgagee assignee on July 15, 2011.  See Kruse Affidavit, ¶ 10-11.  Due to the incomplete (but accurate) trust name, the sale was rescinded (the "Rescinded Foreclosure"), and on July 21, 2016, Wells Fargo, as attorney-in-fact for New Century, executed a corrective assignment of the Mortgage (the "Corrective Assignment") to U.S. Bank, as Trustee.  See Am. Compl., ¶ 5; Corrective Assignment.[9]  The Corrective Assignment specifies that it amends the original Assignment, to completely identify the trust for which U.S. Bank, has always been Trustee.  See Corrective Assignment.

<em>Plaintiff's Bankruptcy</em>

After defaulting on the Loan, Plaintiff filed a voluntary Chapter 7 bankruptcy petition, No. 1:09-bk-12175 (the "Bankruptcy Case") in the U.S. Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court").[10]  In his Chapter 7 petition (the "Bankruptcy Petition"), Plaintiff listed Wells Fargo d/b/a America's Servicing Company as a creditor and the Mortgage on the Property as property of the estate subject to secured claims.  See Bankruptcy Petition, at 20.[11]  Plaintiff listed the Property as having a value of $300,000.00 with a secured mortgage claim of $372,143.00.  See Bankruptcy Petition, at 15.  Plaintiff elected to "surrender" the Property under the Debtor's Statement of Intentions.[12]  See Bankruptcy Petition, at 47.  In reliance on these representations, the Bankruptcy Court issued a Chapter 7 discharge to Plaintiff

---

[7] A copy of the Doepp Affidavit is attached to the First Motion to Dismiss as Exhibit 2.

[8] A copy of the Notice of Right to Cure is attached to the First Motion to Dismiss as Exhibit 2-1.

[9] A copy of the Corrective Assignment is attached to the First Motion to Dismiss as Exhibit 3.

[10] A copy of the docket for the Bankruptcy Case is attached to the First Motion to Dismiss as Exhibit 4.

[11] A copy of the Bankruptcy Petition is attached to the First Motion to Dismiss as Exhibit 5.

[12] This representation is also consistent with Plaintiff not objecting to Wells Fargo's motion for relief from stay to foreclose.  See Bankruptcy Case docket.

on September 1, 2009 and closed the Bankruptcy Case on September 14, 2009.  <u>See</u> Bankruptcy

Court docket; Discharge Order.[13]

<em>Plaintiff's State Court Action</em>

On July 19, 2011, Plaintiff filed the State Court Case seeking declaratory judgment and

injunctive relief challenging the Rescinded Foreclosure.[14]   Among other things, Plaintiff

challenged Wells Fargo's compliance with Paragraph 22 of the Mortgage.  <u>See</u> Decision and

Order dated July 22, 2015 (the "Order").[15]  After moving for summary judgment, the State Court

awarded judgment to Wells Fargo and U.S. Bank, as Trustee on all claims.  <u>See</u> Order and State

Court Judgment.[16]  The State Court found:

> Finally, the Plaintiff contends that Defendants have not complied with the notice requirements as set forth in the mortgage contract.  The undisputed facts, as established by the uncontradicted affidavits of Brian M. Kiser and Andrea Kruse demonstrate that the plaintiff borrower in fact received the notice called for in the mortgage. After reviewing the memoranda and attached authenticated exhibits, and the responses thereto, this Court finds no genuine dispute of material fact.  Defendants, Wells Fargo Bank, N.A. (Wells Fargo) and U.S. Bank, NA, as Trustee for Asset-Backed Pass-Through Certificates, Series 2006-NC2, are entitled to judgment as a matter of law.

Order, at 4.

<em>The Present Action</em>

After removal to this Court, Defendants filed their First Motion to Dismiss on July 31,

2017.  In response, Plaintiff filed a motion requesting permission to file the Amended Complaint

---

[13] A copy of the Discharge Order is attached to the Opposition as Exhibit E.

[14] A copy of the docket for the State Court Case is attached to the First Motion to Dismiss as Exhibit 6.

[15] A copy of the Order is attached to the First Motion to Dismiss as Exhibit 7.

[16] A copy of the State Court Judgment is attached to the First Motion to Dismiss as Exhibit 8.

(the "Motion to Amend") [DN 12] to add new claims and allegations.  Defendants opposed the

Motion to Amend (the "Opposition") on November 27, 2017.  On December 6, 2017, the Court

denied the First Motion to Dismiss as moot without prejudice and allowed the Motion to Amend,

noting "[t]he Defendants' objections to the Motion to Amend are based on factual assertions that

are not appropriate for an objection to a motion to amend[.]"  Plaintiff filed the Amended

Complaint [DN 15] on January 24, 2018.

*New Allegations In The Amended Complaint*

In Count I, Plaintiff alleges that Wells Fargo violated Regulation X (codified as 12 C.F.R.

§ 1024), which implements RESPA, by "dual tracking."  See Am. Compl., ¶¶ 38 & 40.

Specifically, Plaintiff alleges that he received a foreclosure sale notice dated May 12, 2017

informing him of a July 6, 2017 sale.  See Am. Compl., ¶ 34.  Plaintiff further alleges submitting

a "facially complete" loss mitigation application on May 18, 2017 and concludes that Wells

Fargo was thereafter prohibited from scheduling and advertising a foreclosure sale on July 6,

2017."  Am. Compl., ¶¶ 35, 39.  Plaintiff has not and cannot allege that a foreclosure sale has

occurred on July 6, 2017 or any time thereafter.

In Count II, Plaintiff alleges that Wells Fargo violated RESPA by failing to adequately

respond to a notice of error purportedly sent under 12 C.F.R. 1024.35.  On March 21, 2017

Plaintiff sent a request for information ("RFI") to Wells Fargo seeking among other things, a

copy of the transaction history for the loan.  See Am. Compl., ¶ 49; RFI.[17]  Wells Fargo

responded on March 28, 2017 ("RFI Response") and included a copy of Plaintiff's transactional

history along with several other documents.  See Am. Compl., ¶¶ 48-49; RFI Response.[18, 19]

---

[17] A copy of the RFI is attached to the Opposition as Exhibit A.

[18] A copy of the RFI Response is attached to the Opposition as Exhibit B.

Thereafter, Plaintiff sent Wells Fargo a purported notice of error under 12 C.F.R. 1024.35 ("NOE") mistakenly asserting that Wells Fargo did not respond to the RFI or send a copy of the transaction history.  <u>See</u> Am. Compl., ¶¶ 45-47; NOE.[20]  Wells Fargo responded to the NOE on June 27, 2017 ("NOE Response") and included a complete copy of the transaction history, noting that it had inadvertently included the transaction history for only March 26, 2014 - March 14, 2017 in its RFI Response.  <u>See</u> Am. Compl., ¶ 51; NOE Response.[21]

In Count III, Plaintiff alleges that Defendants failed to send him periodic mortgage statements under 15 U.S.C. § 1638(f)(1).  <u>See</u> Am. Compl., ¶¶ 60 & 67.  He also alleges to have made eight payments between May 21, 2009 and November 28, 2016 and that Defendants did not properly apply them according to the terms of the Mortgage.  See Am. Compl., ¶¶ 70-71.

In Count IV, Plaintiff repeats several allegations from Counts I-III (<u>see</u> e.g., Am. Compl., ¶¶ 82-83) as well several allegations regarding the Notice of Right to Cure from the original Complaint (<u>see</u> Am. Compl., ¶¶ 77-79).  The only new factual allegation regarded to Plaintiff's challenge to the Assignment, "New Century had already sold [Plaintiff's] mortgage loan prior to its Bankruptcy[.]"  Am. Compl., ¶ 86.

## ARGUMENT & AUTHORITIES

## I.    <u>The Rule 12(b)(6) Standard.</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted.  The United States Supreme Court clarified and, seemingly heightened, the Rule 8 pleading requirements when it expressly rejected

---

[19] As noted in the RFI Response, Wells Fargo sent several documents to Plaintiff including copies of, 1) the underlying mortgage (the "Mortgage") and all assignments; 2) the note; 3) transaction history (referred to as account history); 4) loan information report; 5) conversations with Wells Fargo; 5) customer correspondence; and 6) the RFI. Only the transaction history is included with the RFI Response as it is the only document at issue.

[20] A copy of the NOE is attached to the Opposition as Exhibit C.

[21] A copy of the NOE Response is attached to the Opposition as Exhibit D.

the oft-cited "no set of facts" language of <u>Conley v. Gibson</u>, 355 U.S. 41 (1957). <u>See</u> <u>Bell Atl.</u> <u>Corp. v. Twombly</u>, 127 S. Ct. 1955, 1968-69 (2007). "The [no set of facts] phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard. Now, in order to survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> at 1955 (internal citations omitted).

In determining the sufficiency of a complaint under Rule 12(b)(6), the Court is not hamstrung by Plaintiff's omission of critical facts and documents. <u>See</u> <u>Beddall v. State St. Bank</u> <u>& Tr. Co.</u>, 137 F. 3d 12, 17 (1st Cir. 1998). The Court may consider documents not attached to a complaint on a motion to dismiss when their authenticity is not disputed or when they are central to a plaintiff's claims. <u>See</u> <u>Watterson v. Page</u>, 987 F. 2d 1, 3 (1st Cir. 1993). In particular, the RFI, RFI Response, NOE, and NOE Response may be considered on this motion to dismiss because: 1) Plaintiff does not challenge their authenticity; and 2) they are referenced in the Amended Complaint and central to Plaintiff's claims. While the Court allowed the Motion to Amend because "Defendants' objections to the Motion to Amend [we]re based on factual assertions that are not appropriate for an objection to a motion to amend[,]" the Court may now consider these critical factual details under First Circuit precedent.

## II.     Count I Fails As A Matter Of Law Because There Has Been No Foreclosure Sale.

Regulation X prohibits a servicer from *conducting* a foreclosure sale during the review of a complete loss mitigation application received at least 37 days before a scheduled sale.  See 12 C.F.R. § 1024.41(g).  An application is "facially complete" when "a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice [of a complete application]."  12 C.F.R. § 1024.41(c)(2)(iv).  Accordingly, "facial completeness" depends upon either a servicer's notice sent after reviewing an application or the submission of a "complete" application, which means one where the servicer has received all information from the borrower required to complete an evaluation.  See 12 C.F.R. § 1024.41(b)(1).  Plaintiff does not allege to have submitted a complete loss mitigation application.

Count I fails for the simple reason that no foreclosure sale has been conducted.  12 C.F.R. § 1024.41(g) prohibits conducting a foreclosure sale while a servicer reviews a complete loss mitigation application.  There can be no violation without a foreclosure sale.  It is not a violation of this section to notice a foreclosure sale, especially where the notice precedes the submission of a loss mitigation application.  Further, Plaintiff has not alleged submitting a complete application as required by this section.  In order for a "facially complete" application to be treated as "complete," Plaintiff must allege that 1) he submitted additional documents requested by Wells Fargo; 2) Wells Fargo provided notice that no additional documents were needed; or 3) Wells Fargo was required to provide notice of complete application.  Plaintiff has made no such allegations.  For these reasons, Count I should be dismissed.

### III.   Plaintiff Fails To Allege A RESPA Claim In Count II Due To Wells Fargo's Demonstrated Compliance And Lack Of Damages.

Plaintiff's claim of non-compliance with Regulation X by failing to respond to requests for information and providing documents is belied by the information contained in Wells Fargo's RFI Response and NOE Response.  Compare Am. Compl., ¶¶ 49-53 with the RFI Response and the NOE Response.  Contrary to Plaintiff's allegations, Wells Fargo did respond to and address Plaintiff's requests in accordance with RESPA, including producing a complete transaction history.  See RFI Response and NOE Response.  Wells Fargo did not violate RESPA.  The RFI Response and NOE Response demonstrate compliance with RESPA.

Separate and aside from Wells Fargo's demonstrable compliance with RESPA, Plaintiff fails to sufficiently allege damages to support a RESPA claim.  In order for a plaintiff to recover under RESPA he "must also plead either actual damages (demonstrable damages that occur 'as a result of' the specific violation complained of) or statutory damages (requiring the showing of a 'pattern or practice of noncompliance' by the servicer)."  Kassner v. Chase Home Fin., LLC, No. CIV.A. 11-10643-RWZ, 2012 WL 260392, at *7 (D. Mass. Jan. 27, 2012) (quoting 12 U.S.C. §§ 2605(f)(1)(A)-(B)); see Mantz v. Wells Fargo Bank, N.A., No. 09–12010–JLT, 2011 WL 196915, at *5 (D. Mass. 2011) (dismissing RESPA claim for failure to plead actual damages); In re Holland, No. 04–18099–JNF, 2008 WL 4809493, *9 (Bankr. D. Mass. 2008) (granting summary judgment against debtor, in part, for failure to establish actual or statutory damages arising from lack of a response to RESPA request).  Attorney's fees and associated costs to assert a RESPA claim are not actual damages under the statute.  See Kassner, 2012 WL 260392 at *7 (collecting cases).

Here, Plaintiff fails to sufficiently allege damages.  Plaintiff's alleged damages include attorney's fees and costs strictly related to asserting this RESPA claim.  See Am. Compl., ¶¶

55a-d.  These are not "actual damages" under RESPA.  See <u>Kassner</u>, 2012 WL 260392 at *7.

Failure to allege actual damages is fatal to Plaintiff's claim.  Further, Plaintiff fails to sufficiently

allege a pattern and practice of violation where the sole basis for the claim, the RFI Response

and NOE Response, demonstrate compliance with RESPA.  Thus, there is no basis to award

actual or statutory damages.  <u>See</u> 12 U.S.C. §§ 2605(f)(1)(A)-(B).

## IV.    Count III Fails Because TILA Does Not Apply Where Plaintiff Received A <u>Discharge Of His Mortgage Debt In Bankruptcy.</u>

Plaintiff alleges that Defendants violated TILA by failing to send him periodic mortgage

statements under 15 U.S.C. § 1638(f)(1).  Plaintiff, however, is not entitled to periodic

statements because he obtained a discharge of his mortgage debt in 2009.  Therefore, this Court

should dismiss Count III.

TILA requires that "[t]he creditor, assignee, or servicer with respect to any residential

mortgage loan shall transmit to the *obligor*, for each billing cycle, a statement . . . "  15 U.S.C. §

1638(f)(1).  <u>See</u> <u>also</u> 12 C.F.R. 1026.41.  If a borrower obtains a discharge from the debt for

which he claims that a periodic statement is required, however, the borrower is no longer an

obligor entitled to periodic statements.  <u>See</u> 12 C.F.R. 1026.41(e)(5).  Indeed, the Consumer

Financial Protection Bureau's Official Staff Commentary states "[t]he periodic statement is not

required for any portion of the mortgage debt that is discharged under applicable provisions of

the U.S. Bankruptcy Code."  <u>See</u> <u>Consumer Financial Protection Bureau's Official Staff</u>

<u>Commentary on Regulation Z</u>, 2014 WL 2195855, at *8 (2017); <u>see also</u> 12 C.F.R. § Pt. 1026,

Supp. I, Part 3 (official interpretation of § 1026.41(e)(5) explains that "[t]he periodic statement is

not required for any portion of the mortgage debt that is discharged under applicable provisions

of the U.S. Bankruptcy Code.").  Following this guidance, courts have ruled that borrowers are

not entitled to periodic statements under Section 1638(f) of TILA after receiving a bankruptcy

discharge.  See Pemental v. Bank of New York Mellon for Holders of Certificates , First Horizon

Mortg. Pass-Through Certificates Series FHAMS 2004-AA5, No. CV 16-483S, 2017 WL

3279015, at *1 (D.R.I. May 10, 2017), report and recommendation adopted sub nom. Pemental

v. Bank of New York Mellon, No. CV 16-483 S, 2017 WL 3278872 (D.R.I. Aug. 1, 2017)

(explaining that a TILA claim for failure to provide periodic statements is not "viable when the

law is clear that periodic statements are not required for a discharged loan.").  Accord In re

McConnie Navarro, 563 B.R. 127, 146 (Bankr. D.P.R. 2017) (citing commentary).

Plaintiff received a discharge of his obligation on his mortgage loan on September 1,

2009.  See Discharge Order.  Accordingly, Wells Fargo was no longer obligated to send him

periodic statements.  See Pemental, 2017 WL 3279015, at *7.  Since Plaintiff was not entitled to

receive periodic statements, Defendants cannot be liable for an alleged failure to send them.

**V.      Plaintiff's Breach Of The Covenant Of Good Faith And Fair Dealing Claims Fail As A Matter Of Law.**

In a poorly pled, unorganized, last-ditch effort, Plaintiff seems to assert a host of

incomplete legal theories in Count IV which he labels "violation of the covenant of good faith

and fair dealing of the mortgage contract."  "Under Rhode Island law, it is well settled that there

is an implied covenant of good faith and fair dealing between parties . . . so that the contractual

objectives may be achieved.  Rhode Island law does not recognize an independent tort action

based on breach of the implied duty of good faith; nevertheless, on a theory of contract law, a

plaintiff is entitled to expectation damages against a party who failed to use best efforts to fulfill

a promise."  T.G. Plastics Trading Co. Inc. v. Toray Plastics (Am.), Inc., 958 F. Supp. 2d 315,

326 (D.R.I. 2013) (internal quotations and citations omitted).  Plaintiff's Count IV does not

comport with Rhode Island law, rather, it contains several unrelated claims, including, 1) failure

to send a notice of right to cure letter in compliance with Paragraph 22 of the Mortgage; 2)

improperly crediting payments; and 3) a void mortgage assignment.  As discussed in Defendants'
motion to dismiss, res judicata bars Plaintiff's claim based upon the notice of right to cure letter
previously litigated and resolved in the State Court Case as well as any claim that could have
been asserted in that case.  Plaintiff fails to allege how any purported payment was not properly
credited under the terms of the Mortgage.  Lastly, Plaintiff's challenge to an assignment of
mortgage cannot form the basis for a contract claim for a contract to which Plaintiff alleges U.S.
Bank, as Trustee is not a party.

### A. Res Judicata Bars Plaintiff's Notice Of Right To Cure Claim As Well As Any Claim Premised Upon Payment Made Before The State Court Case.

On July 19, 2011, Plaintiff filed the State Court Case, where he asserted a host of claims
based upon his loan and Mortgage.  The State Court specifically found that Plaintiff received the
notice required by Paragraph 22 of the Mortgage.  Plaintiff is accordingly barred by res judicata
from reasserting this claim or any claim that could have been asserted in the State Court Case
(i.e., any claim based on conduct occurring prior to July 19, 2011, including claims based upon
alleged loan payments made in 2010 and 2009).  See Am. Compl., ¶ 82.

### B. Plaintiff Fails To State A Claim For Misapplication Of Loan Payments.

Although Plaintiff alleges to have made some loan payments after the State Court Case
(November 1 & 28, 2016), he fails to allege how these payments were not applied according to
the terms of Mortgage.  Plaintiff does not dispute that his mortgage loan is default for his failure
to make monthly payments and the Mortgage expressly allows the lender to return, refuse to
accept, or accept without applying, any payment or partial payment that does not bring the loan
current.  See Am. Compl., ¶¶ 9, 70; Mortgage, ¶ 1.  Plaintiff fails to allege how the purported
payments were applied or how the purported application violated any term of the Mortgage.

### C.      Challenging An Assignment Of Mortgage Is Not A Valid Basis For A Contract Claim.

Although unclear, Plaintiff seemingly asserts a contract-based claim against U.S. Bank, as Trustee, an entity that Plaintiff claims is not a party to that contract (the Mortgage).  See Am. Compl., ¶¶ 85, 86.  Regardless of whether U.S. Bank, as Trustee is the mortgagee by way of a valid assignment, this claim fails.  If Plaintiff's unsupported conclusion is correct, that U.S. Bank, as Trustee "has never been assigned the [M]ortgage," than U.S. Bank, as Trustee is not a party to the Mortgage and therefore could not have breached any of its terms.  See Am. Compl., ¶ 85.  If, on the other hand, U.S. Bank, as Trustee was assigned the Mortgage, a valid and lawful assignment cannot form the basis for a breach of any Mortgage term.  This claim is illogical.

Regardless, even outside the context of a claim for breaching the implied covenant of good faith and fair dealing, Plaintiff provides no basis to challenge U.S. Bank, as Trustee's status as mortgagee.  On February 25, 2009, Wells Fargo, as attorney-in-fact for New Century, assigned the Mortgage to U.S. Bank, as Trustee, using the name U.S. Bank National Association, as Trustee for Asset-Backed Pass-Through Certificates, Series 2006-NC2.  See Assignment. Although the Assignment omitted the complete name of the trust, it correctly identified, U.S. Bank, as Trustee, which has been the mortgagee, at all relevant times, and the correct trust series. Due to the incomplete (but accurate) trust name, on July 21, 2016, Wells Fargo, as attorney-in-fact for New Century, executed the Corrective Assignment to U.S. Bank, as Trustee.  See Am. Compl., ¶ 5; Corrective Assignment.  The Corrective Assignment specifies that it amends the original Assignment, to completely identify the trust for which U.S. Bank has always been

Trustee.  <u>See</u> Corrective Assignment.   None of the allegations in the Amended Complaint challenge this chain of title establishing U.S. Bank, as Trustee's status as mortgagee.[22]

Where none of these "claims" support a breach of the implied covenant of good faith and fair dealing cause of action, the Court should dismiss Count IV in its entirety.

CONCLUSION

For the foregoing reasons, this Court should: (1) deny Plaintiff's Motion to Amend; (2) dismiss the Complaint with prejudice; and (3) grant such other relief as the Court deems just and equitable.

Respectfully submitted,

U.S. BANK N.A. AS TRUSTEE FOR
CITIGROUP MORTGAGE LOAN TRUST
INC. 2006-NC2 ASSET BACKED PASS
THROUGH CERTIFICATES SERIES
2006-NC2 and
WELLS FARGO BANK, N.A.,

By their counsel,

<u>/s/ David E. Fialkow</u>
David. E. Fialkow (Bar No. 9318)
david.fialkow@klgates.com
Edward J. Mikolinski (Bar No. 9035)
edward.mikolinski@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Telephone:  +1 617 261 3100
Dated:  February 7, 2018                    Facsimile:  +1 617 261 3175

---

[22] To the extent Plaintiff challenges any assignment based upon the original lender's bankruptcy, this argument is squarely contradicted by the court's orders entered in New Century's bankruptcy case and has been rejected by numerous courts.  <u>See</u> <u>e.g.</u>, <u>Matt v. HSBC Bank U.S.A, N.A.</u>, 968 F. Supp. 2d 351, 359 (D. Mass. 2013) (concluding that mortgage assignments were not void due to New Century's bankruptcy).

<u>**CERTIFICATE OF SERVICE**</u>

      I, David E. Fialkow certify that the foregoing filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 7th day of February 2018.

                           */s/ David E. Fialkow*
                           David E. Fialkow