# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**TROY LEBEAU**

**VS**                                              **CA2017-CV-329M-PAS**

**U.S. BANK, N.A. AS TRUSTEE FOR
CITIGROUP MORTGAGE LOAN TRUST
INC. 2006-NC2, ASSET-BACKED
PASS-THROUGH CERTIFICATES SERIES 2006-NC2, ALIAS
U.S. BANK, N.A. AS TRUSTEE FOR CITIGROUP MORTGAGE
LOAN TRUST, INC, SERIES 2006-NC2,
WELLS FARGO BANK, N.A.**

## SECOND AMENDED COMPLAINT

Plaintiff, by his attorney, complains of Defendants as follows:

1.      Plaintiff is a resident of State of Rhode Island with an address of 36 Black Plain Road, North Smithfield, Rhode Island.  Plaintiff resides at and own this real estate, which is a one family residential home.

2.      Plaintiff  executed a mortgage to New Century Mortgage Corporation ("New Century") on  July 17, 2006.  A copy  was attached  as Exhibit A to the original complaint.

3.       Defendant, U.S. Bank N.A. as trustee for Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset Backed Pass Through Certificates, Series 2006-NC2 ("Certificates, Series 2006-NC2" ) claims to be the holder of Plaintiff's mortgage.  However there is no entity with this name.

4.      Defendant,  U.S. Bank, N.A. is the Trustee for Citigroup Mortgage Loan Trust, Inc. 2006-NC2.

5.      This trust is registered with the Securities and Exchange Commission. Inc. 2006-NC2, which is referenced at the following link to that governmental website:

1

https://www.sec.gov/Archives/edgar/data/1374759/000114420408035
466/sec10ka.txt

6.      US Bank as trustee for the actual trust has not been assigned the mortgage from New Century, which filed bankruptcy in the United States Bankruptcy Court for the District of Delaware on April 1, 2007 in jointly administered case number 07-10416.

7.      The only alleged assignment to Certificates Series 2006-NC2  is dated July 21, 2016 from  Wells Fargo Bank, N.A. , with a purported power of attorney to Certificates Series 2006-NC2.  However, Wells Fargo did not have a power of attorney in 2016 from New Century, as  after April 1, 2007, Wells Fargo had no Power of Attorney from New Century due to its bankruptcy.

8.      When New Century filed bankruptcy on April 1, 2007 it did not own Plaintiff's mortgage loan.

9.      New Century conveyed Plaintiff's mortgage to NC Capital Corporation before it filed bankruptcy on or before  September 1, 2006.

10.     The purported corrective assignment of mortgage dated July 21, 2016 could not convey the Plaintiff's mortgage, because on that date New Century had no ownership interest in Plaintiff's mortgage and the grantee was a non-existent entity.

11.     Wells Fargo Bank, N.A. ("Wells Fargo") claims to be the loan servicer for Plaintiff's  mortgage bank.  It is a debt collector and a national bank.

12.     Harmon Law Offices, P.C.("Harmon")  on behalf of US Bank scheduled a foreclosure sale for Plaintiff's  home on July 6, 2017 at 12:00 PM.

13.     Plaintiff lives in this property as his principal residence.

14.     From November  2016 through March 2017, Wells Fargo under its own name, under the name of Wells Fargo Home Mortgage and

2

America's Servicing Company sent solicitations to Plaintiff advising him that he could apply for a loan modification.

15.     Plaintiff received one of these packages, which provided him a form to fill out to be considered for a loan modification.

16.     This loan modification package indicated that this could be sent by email, fax or mailing.

17.     Plaintiff filled out this loss mitigation application package and faxed it to the designated fax number on May 18, 2017.  He included a signed 4506T form for his tax return. No other documents were requested by Wells Fargo in the loss mitigation package.

18.     Thus on May 18, 2017,  Plaintiff transmitted a facially complete package for loss mitigation to Wells Fargo, which was received by fax on May 18, 2017 by Wells Fargo.  This package was also received by Wells Fargo on May 22, 2017 by certified mail return receipt requested, number 9407110200829403982562**.**

19.     Despite receipt of a facially complete package more than 37 days before the sale date,  Wells Fargo directed its attorney Harmon Law Offices , P.C. to commence advertising after receipt of a facially complete package.

## COUNT I

## VIOLATION OF 12 CFR 1024.41 OF THE REAL ESTATE SETTLEMENT AND PROCEDURES ACT PROHIBITING DUAL TRACKING

20.     Paragraphs 1-19 are incorporated by reference.

21.     This is an action for actual and statutory damages filed by the Plaintiff for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and specifically of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau (CFPB).  This is also an action for actual and statutory damages filed by the Plaintiff for violations of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.  ("TILA").

22.     This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.

23.     Wells Fargo Bank, N.A. performs its mortgage loan servicing business under the name of Wells Fargo Home Mortgage ("WFHM") and America's Servicing Company ("ASC") Wells Fargo claims to be the current servicer of a Promissory Note and Deed of Trust on the Plaintiff's residential real estate.

24.     In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

25.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act  (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z)(February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014 and were amended on April 19, 2018.

26.     The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

27.     The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers."  Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

28.     The Plaintiff is asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below.  The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

29.     Pursuant to 12 C.F.R. §1024.41, Plaintiff was entitled to apply for loss mitigation with Wells Fargo.

30. Defendant had scheduled a foreclosure sale for July 6, 2017 pursuant to a Notice of Sale purportedly mailed on May 12, 2017.

31. Plaintiff transmitted a facially complete loss mitigation application to Wells Fargo on May 18, 2017.

32. The facially complete application was received by Wells Fargo 57 days before the purported sale date.

33. Regulation X provides that Wells Fargo had to review a facially complete loss mitigation application received more than 37 days before a sale.

34. Regulation X provides that Wells Fargo was not permitted to dual track loss mitigation and a foreclosure sale pursuant to 12 C.F.R. 1024.41(g).

35. Since the Plaintiff had submitted a facially complete loss mitigation application on May 18, 2017, it was prohibited from scheduling and advertising a foreclosure sale on July 6, 2017.

36. Despite the facially complete package, Wells Fargo went forward and violated the ban against dual tracking.

37. As a result of this violation of Regulation X, Plaintiff incurred damages.

38. As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for dual tracking.

39. The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this violation.

a. He incurred costs for gasoline to visit his attorney on at least three occasions regarding the response to loss mitigation, driving to his attorney's office for a round trip totaling 43 miles. The IRS standard mileage allowance provides for .56 per mile.

b. He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney.

c.     His mortgage loan account has been improperly charged  legal fees and expenses for the attempted foreclosure, which has not been corrected.

d.     He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

WHEREFORE, Plaintiff demands judgment for actual damages plus

statutory damages of $2,000.00  for violation for violation of the ban against

dual tracking  plus attorney fees and costs.

<div style="margin-left:50%">

TROY LEBEAU
By his Attorney

/s/ John B. Ennis

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

</div>

June 30, 2018

## COUNT II

## <u>VIOLATION OF REGULATION X</u>

40.     Paragraphs 1-39 are incorporated by reference.

41.     On or about June 13, 2017, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

42.     The Notice of Error was mailed by certified mail, return receipt requested, having an article number  9407110200830594181542. The Notice

was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

43.     The Notice was received by the Defendant on June 16, 2017.

44.     The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had not provided the life of the loan transactional history. Plaintiff had sent Wells Fargo a Request for Information on March 21, 2017 seeking the following information:

An exact reproduction of the life of loan mortgage transactional history for this loan on the system of record used by the servicer from origination of the loan to the date of this letter. For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

45.     Wells Fargo received this Request for Information on March 23, 2017 and did not provide the information requested within thirty business days of receipt. When it did respond by a letter dated March 28, 2017 it did not provide the documents requested causing the Plaintiff to send a Notice of Error referenced herein.

46.     Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than July 31, 2017.

47     Defendant did not respond within thirty business days. When it did respond on June 27, 2017, it failed to correct the error. It refused to provide the documents requested stating that the documents requested were overly broad.

48.     Wells Fargo has failed to respond to this Notice of Error contending that the documents requested were overly broad.

49.     The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

50.     As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

51.     The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.     He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for a round trip totaling 43.8  miles to discuss this matter. The IRS standard mileage allowance provides for .56 per mile.

b.     He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding his RESPA requests.

c.     He has incurred postage and copying costs in transmitting this Notice of Error.

d.     He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

52.     The Plaintiff has demonstrated through the failure of the Defendant to correct the Notice of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error  or any Requests for Information whenever there is litigation pending between Wells Fargo and a consumer.

53.     Wells Fargo has a pattern and practice of sending form letters like Exhibit  B to ALL consumers who are in litigation and to refuse to

respond to Requests for Information or Notices of Error, when there is pending litigation, despite the fact that there is no litigation privilege.

54.    On or about November 4, 2018, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

55.    The Notice of Error was mailed by certified mail, return receipt requested, having an article number  9407110898765000800573. The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

56.    The Notice was received by the Defendant on November 7, 2017.

57.    The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had not provided the identity and address for the master servicer of the mortgage loan. Plaintiff had sent Wells Fargo a Request for Information on March 23, 2017 seeking the following information:

 This is a Request for Information relating to your servicing of the mortgage loan of the above-named client. All references herein are to Regulation X of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd Frank Act. The written authority of the client to my law firm for this Request is attached hereto and incorporated herein by this reference.

Pursuant to Section 1024.36(d), you must respond no later than ten (10) days (excluding legal public holidays, Saturdays and Sundays) after you receive this request for information.

Please provide the following information within the time periods noted herein:

1.    The identity of and address for the current owner of the mortgage loan identified herein.

2.    The identity of and address for the master servicer of the mortgage loan identified herein.
3.    The identity of and address for the current servicer of the mortgage loan identified herein.

58.    Wells Fargo received this Request for Information on March 23, 2017 and did not provide the information requested within ten business days of receipt. When it did respond by a letter dated March 28, 2017 it did not provide the information requested causing the Plaintiff to send a Notice of Error referenced herein. Instead it stated that the information request was overly broad.

59.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than July 31, 2017.

60.    Defendant did not respond within thirty business days. When it did respond on November 15, 2017 and December 4, 2017, it failed to correct the error. It refused to  provide the documents requested stating that the documents requested were overly broad.

61.    Wells Fargo has failed to respond to this Notice of Error contending that the documents requested were overly broad.

62.    The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

63.    As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

64.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

65.     He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office to discuss this matter for

a round trip totaling 43.8  miles to discuss this matter. The IRS standard
mileage allowance provides for .56 per mile.

      b.     He has had to incur the expense of using electricity to recharge
his cell phone to call and receive calls from his attorney regarding his
RESPA requests.

      c.     He has incurred postage and copying costs in transmitting this
Notice of Error.

      d.     He has incurred attorney fees and costs for the prosecution of
this action. His fee agreement with his attorney provides that he will be
responsible for legal fees expenses incurred in regard to this action.

66.     The Plaintiff has demonstrated through the failure of the
Defendant to correct the Notice of Error in this case that the Defendant has
exhibited a pattern and practice of failure to respond to RESPA Notices of
Error  or any Requests for Information whenever there is litigation pending
between Wells Fargo and a consumer.

67.     Wells Fargo has a pattern and practice of sending form letters
like Exhibit B to consumers who are in litigation and to refuse to respond to
Requests for Information or Notices of Error. Wells Fargo also has a pattern
and practice of sending a form letter like Exhibit C which without any
justification states that the information requested is overly broad and refused
to respond to Requests for Information. It also has a pattern and practice of
responding to Notices of Error with form letters such as Exhibit D, in which
it routinely refuses to respond to a Notice of Error, stating that the concerns
were previously addressed and that it considers the matter  closed.

68.     On or about November 4, 2018, the Plaintiff sent a written
notice of error to the Defendant that included Defendant that included the
name of the borrower, the identity of the account, the property description
and stated the information requested. This request was made pursuant to 12
CFR § 1024.36(a).

69.     The Notice of Error was mailed by certified mail, return receipt
requested, having an article number  9407110898765000800696. The Notice
was mailed to the address noticed by the Defendant on its website as the

designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

70.     The Notice was received by the Defendant on November 7, 2017.

71.     The Plaintiff's Notice of Error referenced the failure to provide all loss mitigation options. Plaintiff had sent  Wells Fargo a Request for Information, which it received on May 22, 2017 seeking the following information:

The client has experienced increased bills resulting in being behind in mortgage payments.  The written authority of the client to my law firm for this Request is attached hereto and incorporated herein by this reference.

The client is requesting all loss mitigation options under Section 1024.41 of Regulation X.  Please provide the client with information regarding all loss mitigation options that are available and provide the client with all of the procedural safeguards and rights under Regulation X.   Please confirm all of the programs and the documentation and data necessary to submit a "complete" loss mitigation application under all of the same.
The consumer has transmitted a complete package to you.   This is the package which you sent to the client, which has been filled out completely. As a result, you have a facially complete package.

72.     Wells Fargo received this Request for Information on May 22, 2017  and did not provide the information requested within thirty business days of receipt.

73.     Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 19, 2017.

74     Defendant did not respond within thirty business days. When it did respond on November 15, 2017 and December 4, 2017, it failed to correct the error. It refused to  provide the documents requested stating that the documents requested were overly broad.

75.     Wells Fargo has failed to respond to this Notice of Error contending that the documents requested were overly broad.

76.     The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

77.     As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

78.     The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

79.      He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office to discuss this matter for a round trip totaling 43.8  miles to discuss this matter. The IRS standard mileage allowance provides for .56 per mile.

b.     He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding his RESPA requests.

c.     He has incurred postage and copying costs in transmitting this Notice of Error.

d.     He has not received the information regarding loss mitigation options available to him by the owner of the mortgage loan, the servicer of the mortgage loan or the Master Servicer of the mortgage loan.

e.     He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

80.     The Plaintiff has demonstrated through the failure of the Defendant to correct the Notice of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error  or any Requests for Information whenever there is litigation pending between Wells Fargo and a consumer.

81.     Wells Fargo has a pattern and practice of sending form letters like Exhibits B,   C and D to consumers who are in litigation and to refuse to respond to Requests for Information or Notices of Error.

82.     On or about November 4, 2018, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

83.     The Notice of Error was mailed by certified mail, return receipt requested, having an article number  94071108987650000800559. The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

84.     The Notice was received by the Defendant on November 7, 2017.

85.     The Plaintiff's Notice of Error referenced the failure to provide all periodic statements. Plaintiff had sent  Wells Fargo a Request for Information, which it received on March 23, 2017 seeking the following information:

Please provide all of the   periodic monthly statements for the consumer's mortgage loan account, which have been sent to the consumer or which have been prepared and not sent to the consumer.

86.     Wells Fargo received this Request for Information on March 23, 2017  and did not provide the information requested within thirty business days of receipt.

87.     Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 20, 2017.

88.     Defendant did not respond within thirty business days. When it did respond on November 15, 2017 and December 4, 2017, it failed to

correct the error. It refused to  provide the documents requested stating that the documents requested were overly broad.

89.     Wells Fargo has failed to respond to this Notice of Error contending that the documents requested were overly broad.

90.     The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

91.     As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

92.     The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

93.      He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office to discuss this matter for a round trip totaling 43.8  miles to discuss this matter. The IRS standard mileage allowance provides for .56 per mile.

b.      He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding his RESPA requests.

c.      He has incurred postage and copying costs in transmitting this Notice of Error.

d.      He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

94.     The Plaintiff has demonstrated through the failure of the Defendant to correct the Notice of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error  or any Requests for Information whenever there is litigation pending between Wells Fargo and a consumer.

95.     Wells Fargo has a pattern and practice of sending form letters like Exhibits B,  C and D to consumers who are in litigation and to refuse to respond to Requests for Information or Notices of Error.

96.     On or about November 4, 2018, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

97.     The Notice of Error was mailed by certified mail, return receipt requested, having an article number  9407110898765000800634. The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

98.     The Notice was received by the Defendant on November 7, 2017.

99.     The Plaintiff's Notice of Error referenced the failure to provide information regarding the contractual status of the mortgage loan account at the time of Wells Fargo obtaining servicing rights. Plaintiff had sent  Wells Fargo a Request for Information, which it received on March 23, 2017 seeking the following information:

 With respect to the receipt of all periodic payments of principal, interest and escrow, what was the contractual status of the consumer's  mortgage loan when you obtained servicing rights for this mortgage loan.
Please provide all documents on which you relied on to provide this information.

100.   Wells Fargo received this Request for Information on March 23, 2017  and did not provide the information requested within thirty business days of receipt.

101.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 20, 2017.

102.    Defendant did not respond within thirty business days. When it did respond on November 15, 2017 and December 4, 2017, it failed to correct the error. It refused to  provide the documents requested stating that the documents requested were overly broad.

103.    Wells Fargo has failed to respond to this Notice of Error contending that the documents requested were overly broad.

104.    The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

105.    As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

106.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

107.     He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office to discuss this matter for a round trip totaling 43.8  miles to discuss this matter. The IRS standard mileage allowance provides for .56 per mile.

b.       He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding his RESPA requests.

c.       He has incurred postage and copying costs in transmitting this Notice of Error.

d.       He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

108.    The Plaintiff has demonstrated through the failure of the Defendant to correct the Notice of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of

Error  or any Requests for Information whenever there is litigation pending between Wells Fargo and a consumer.

109.   Wells Fargo has a pattern and practice of sending form letters like Exhibits B,  C and D to consumers who are in litigation and to refuse to respond to Requests for Information or Notices of Error.

110.   On or about November 4, 2018, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

111.   The Notice of Error was mailed by certified mail, return receipt requested, having an article number  940711089876500800658. The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

112.   The Notice was received by the Defendant on November 7, 2017.

113.   The Plaintiff's Notice of Error referenced the failure to provide the mortgage loan servicing file. Plaintiff had sent  Wells Fargo a Request for Information, which it received on March 23, 2017 seeking the following information:

 The consumer requests that you provide the consumer the entire mortgage loan servicing file including all servicing notes, collection notes, recordings of all phone calls you or any agent acting on your behalf made to the consumer or to her attorney, and any calls from the consumer or her attorney to you or an agent which you recorded and all loss mitigation documents sent to you by the consumer and all loss mitigation responses sent from you to the consumer from the time that you obtained servicing rights to the present.

You committed error by insisting that this request was overbroad. However this was a specific request, which is readily accessible on your electronic system of record and is not unduly burdensome or overbroad.

114.    Wells Fargo received this Request for Information on March 23, 2017  and did not provide the information requested within thirty business days of receipt.

115.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 20, 2017.

116.    Defendant did not respond within thirty business days. When it did respond on November 15, 2017 and December 4, 2017, it failed to correct the error. It refused to  provide the documents requested stating that the documents requested were overly broad.

117.    Wells Fargo has failed to respond to this Notice of Error contending that the documents requested were overly broad.

118.    The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

119.    As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

120.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

121.     He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office to discuss this matter for a round trip totaling 43.8  miles to discuss this matter. The IRS standard mileage allowance provides for .56 per mile.

b.       He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding his RESPA requests.

c.       He has incurred postage and copying costs in transmitting this Notice of Error.

d.    He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

122.    The Plaintiff has demonstrated through the failure of the Defendant to correct the Notice of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error  or any Requests for Information whenever there is litigation pending between Wells Fargo and a consumer.

123.    Wells Fargo has a pattern and practice of sending form letters like Exhibits B,   C and D to consumers who are in litigation and to refuse to respond to Requests for Information or Notices of Error.

124.    On or about November 4, 2018, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

125.    The Notice of Error was mailed by certified mail, return receipt requested, having an article number  9407110898765000800597.  The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

126.    The Notice was received by the Defendant on November 7, 2017.

127.    The Plaintiff's Notice of Error referenced the failure to provide information regarding the status at the time  of default and all default notices sent to the consumer. Plaintiff had sent  Wells Fargo a Request for Information, which it received on March 23, 2017 seeking the following information:

128.    Wells Fargo received this Request for Information on March 23, 2017  and did not provide the information requested within thirty business days of receipt.

129.   Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 20, 2017.

130.   Defendant did not respond within thirty business days. When it did respond on November 15, 2017 and December 4, 2017, it failed to correct the error. It refused to  provide the documents requested stating that the documents requested were overly broad.

131.   Wells Fargo has failed to respond to this Notice of Error contending that the documents requested were overly broad.

132.   The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

133.   As a result of this lack of compliance by the Defendant, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

134.   The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

135.    He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office to discuss this matter for a round trip totaling 43.8  miles to discuss this matter. The IRS standard mileage allowance provides for .56 per mile.

b.      He has had to incur the expense of using electricity to recharge his cell phone to call and receive calls from his attorney regarding his RESPA requests.

c.      He has incurred postage and copying costs in transmitting this Notice of Error.

d.      He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with his attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

136. The Plaintiff has demonstrated through the failure of the Defendant to correct the Notice of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error or any Requests for Information whenever there is litigation pending between Wells Fargo and a consumer.

137. Wells Fargo has a pattern and practice of sending form letters like Exhibits B, C and D to consumers who are in litigation and to refuse to respond to Requests for Information or Notices of Error.

WHEREFORE, Plaintiff demands judgment for actual damages plus

statutory damages of $2,000.00 per violation for failing to respond to Notice

of Error plus attorney fees and costs.

<div style="text-align:right">

TROY LEBEAU
By his Attorney
</div>

June 30, 2018

<div style="text-align:right">

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com
</div>

## COUNT III

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY US BANK'S FAILURE TO SEND THE PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638**

138. Paragraphs 1-137 are incorporated by reference.

139. This is an action for damages brought by the Plaintiff, who is a consumer, for US Bank's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

140.    Specifically, Plaintiff seeks the remedies provided in TILA for Defendants' failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

141.    This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements.  15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00.  Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

142.    The Defendant, Wells Fargo Bank, N.A. is a National Bank that services residential mortgage loans.  Wells Fargo claims to be the servicer of the mortgage loan, which is the subject of this complaint

144.    US Bank claims to be the owner of the mortgage note and mortgage loan.

145.    The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

146.    Plaintiff has not been sent a monthly statement in compliance with 12 C.F.R. 1026.41 since November 1, 2016.

147.    Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, US Bank was required to send the Plaintiff a monthly mortgage statement that provides the following information:

(d)  *Content and layout of the periodic statement.*  The periodic statement required by this section shall include:

(1)  *Amount due.*  Grouped together in close proximity to each other and located at the top of the first page of the statement:

(i)  The payment due date;

(ii)  The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and

(iii)  The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.

(2)  *Explanation of amount due.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)**  The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;

**(ii)**  The total sum of any fees or charges imposed since the last statement; and

**(iii)**  Any payment amount past due.

**(3)** *Past Payment Breakdown.*  The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)**  The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)**  The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)** *Transaction activity.*  A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)** *Partial payment information.*  If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)** *Contact information.*  A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)** *Account information.*  The following information:

**(i)**  The amount of the outstanding principal balance;

**(ii)**  The current interest rate in effect for the mortgage loan;

**(iii)**  The date after which the interest rate may next change;

**(iv)**  The existence of any prepayment penalty, as defined in § 1026.32(b)(6)(i), that may be charged;

**(v)** The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

**(8)** *Delinquency information.* If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

**(i)** The date on which the consumer became delinquent;

**(ii)** A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

**(iii)** An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

**(iv)** A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

**(v)** A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

**(vi)** The total payment amount needed to bring the account current; and

**(vii)** A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

148. None of these statements have been sent to the Plaintiff, inconformity with Regulation Z since November 14, 2016.

149. The Plaintiff has been charged fees for Property Preservation/Maintenance in a monthly charge of $15.00 on each statement. These fees were neither reasonable nor necessary and were not actually paid to the vendor which purportedly billed the loan servicer.

150. Undocumented and inaccurate fees were charged to the mortgage loan account for advertising costs and foreclosure fees and reflected in each of the periodic monthly statements from November 2016 to May 16, 2018.

151. Plaintiff made payments on the following dates which were not applied to the mortgage as required by the terms of the mortgage:

November 28, 2016    $835.00
November 28, 2016    $835.00
November 1, 2016     $1946.00
March 23, 2010       $1853.54
February 23, 2010    $1853.54
December 1, 2009    $1853.54
November 21, 2009   $1853.54
May 21, 2009         $5135.77

152.   Each of these charges was not applied as required and as a result each charge caused each statement to be inaccurate since these payments were not applied to principal and interest and escrow as required by the terms of the mortgage.

153.   These charges have resulted in an incorrect calculation of principal and interest in all statements sent to the consumer by Wells Fargo.

154.   As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, US Bank is liable for actual damages and statutory damages of up to $4,000.00 for each of the statements, which were either not sent to the Plaintiff from November 14, 2016 to April 18, 2018 or were not accurate and not in conformity with 12 C.F.R. 1026.41 and TILA.

155.   On April 19, 2018, Regulation Z was amended to clarify that mortgage statements had to be mailed to consumers who were either in Bankruptcy or have been discharged in bankruptcy.

156.   15 U.S.C. § 1638 had never provided any exception to allow a loan servicer acting on behalf of the owner of the mortgage loan an exemption from mailing a periodic statement to consumers in bankruptcy or who were discharged in bankruptcy.

157.   12 C.F.R. 1026.41, which is Regulation Z, was enacted in order to implement the provisions of TILA.

158.   This Regulation provided an exemption to provide any statements for consumers in bankruptcy, stating:

A servicer is exempt from the requirements of this section for a mortgage loan while the consumer is a debtor in bankruptcy under Title 11 of the United States Code.

159.   Plaintiff was not a consumer in bankruptcy pursuant to title 11 of the United States Code at any time in 2016 or thereafter.

160.   The interpretation of Regulation Z, suggested that there wa an exemption for loan servicers, which allowed a loan servicer an exemption from sending a statement to a consumer who had  been discharged in bankruptcy to the extent that the consumer did not reaffirm the obligation of the mortgage loan.

161.   This interpretation of Regulation was in derogation of the statute and the regulation, and did not implement the actual language of the statute and the regulation.

162.   Wells Fargo recognized that there was no exception created under the statute or the regulation

163.   Instead, Wells Fargo continued to mail statements to the consumer, through his attorney.

164.   Each of these statements, through April 16, 2018 were not accurate as alleged in this complaint.

165.   After May 16, 2018 Wells Fargo mailed the consumer a periodic statement, pursuant to the amended version of Regulation Z.

166.   This statement was received on May 22, 2018 at the office of the Plaintiff's attorney.

167.   This statement was inaccurate as alleged in this complaint.  It did not credit the Plaintiff pursuant to the terms of the mortgage for the following payments made by the Plaintiff on the following dates:

November 28, 2016        $835.00
November 28, 2016        $835.00
November 1, 2016         $1946.00
March 23, 2010           $1853.54

February 23, 2010     $1853.54
December 1, 2009     $1853.54
November 21, 2009     $1853.54
May 21, 2009     $5135.77

168.    These payments were not applied pursuant to the terms of the mortgage.

169.    Paragraph 2 of the mortgage provides for the application of mortgage payments in the following order of priority:
     (a)     interest due under the note
     (b)     principal due under the note
     (c)     amount due for escrow
     (d)     late charges
     (e)     any other amounts due under the security instrument
     (f)     additional payments of principal

170.    Plaintiff's May 16, 2016 periodic statements indicates that the mortgage loan account includes $2461.16 in unpaid late fees.

171.    Plaintiff's note provides for a late fee in the amount of 5% of the principal and interest payment.

172.    Each late fee for the Plaintiff's mortgage loan was $101.60, which divided by the $2461.16 in unpaid late fees would indicate that the consumer incurred only 25 late fees.

173.    The periodic statement dated May 16, 2018 inaccurately states that the consumer's mortgage loan is due for November 1, 2018.

174.    Payments made by the Plaintiff after November 1, 2008 were applied to late fees and other charges.

175.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

     a.     He has incurred costs for gasoline to visit his attorney concerning this matter on at least one occasion, driving to his attorney's office for a round trip totaling 43 miles. The IRS standard mileage allowance provides for .56 per mile.

b.  He has incurred postage costs, copying costs and stationary and envelope costs for transmission to the Defendant.

c.  He has not obtained accurate information, which is the purpose of the TILA statute, regarding his mortgage loan account.

d.  He has incurred attorney fees and costs for the prosecution of this action. His fee agreement with their attorney provides that he will be responsible for legal fees expenses incurred in regard to this action.

d.  He has not received a proper calculation for principal, interest and escrow on each statement, resulting in him not receiving a proper tax deduction on Federal and State taxes.

WHERFORE, Plaintiff demands Judgment against US Bank for statutory damages of at least $4,000.00, for each failure to send a monthly mortgage statement in conformity with TILA since November 14, 2016 plus actual damages, plus attorney fees and costs and all other just and proper relief.

|  |  |
|---|---|
| | TROY LEBEAU |
| June 30, 2018 | By his Attorney |
| | |
| | /s/ John B. Ennis |
| | JOHN B. ENNIS, ESQ. #2135 |
| | 1200 Reservoir Avenue |
| | Cranston, Rhode Island 02920 |
| | (401) 943-9230 |
| | Jbelaw75@gmail.com |

## COUNT IV

## VIOLATION OF THE COVENANT OF GOOD FAITH AND DEALING FOR BREACH OF THE MORTGAGE CONTRACT

176.   Paragraphs 1-175 are incorporated by reference.

177.   The mortgage contract between Plaintiff and the mortgagee and its successor or assignee contained an implied covenant of good faith and dealing between the parties so that the contractual obligation of the contract might be achieved.

178.   The Plaintiff has been charged fees for Property Preservation/Maintenance in a monthly charge of $15.00 on each statement since 2008.   These fees were neither reasonable nor necessary and were not actually paid to the vendor which purportedly billed the loan servicer.

179.   Improper and inaccurate advertising costs and foreclosure fees have been charged to the mortgage loan account and reflected in each of the periodic monthly statements.

180.   Plaintiff made payments on the following dates which were not applied to the mortgage as required by the terms of the mortgage:

| | |
|---|---|
| November 28, 2016 | $835.00 |
| November 28, 2016 | $835.00 |
| November 1, 2016 | $1946.00 |
| March 23, 2010 | $1853.54 |
| February 23, 2010 | $1853.54 |
| December 1, 2009 | $1853.54 |
| November 21, 2009 | $1853.54 |
| May 21, 2009 | $5135.77 |

181.   Each of these charges was not applied as required and as a result each charge caused each statement to be inaccurate since these payments were not applied to principal and interest and escrow as required by the terms of the mortgage.

182.   The misapplication of payments to the Plaintiff's mortgage loan account has resulted in the Plaintiff not being credited for interest and escrow payments, which would have been tax deductions on his federal and state income tax returns.

183.   As indicated in the statements received by the Plaintiff, his mortgage loan account has never been accelerated by Wells Fargo.

184.   Advertising costs and foreclosure fees have been charged to the mortgage loan account and reflected in each of the periodic monthly statements despite the fact that neither lender, the assignee or the servicer of the owner of the mortgage loan accelerated the mortgage loan.

185.   Due to the failure to accelerate the mortgage loan, the statutory power of sale could not be accelerated.

186.   As a result, Plaintiff has incurred the following damages:

a.   Plaintiff has incurred the cost of filing this action in the form of filing fees and service fees, incurred in order to stop the foreclosure, which was in violation of the terms of the mortgage.

b.   Plaintiff's mortgage loan account has been charged fees and costs which were not permitted without a valid default letter having being sent to him.

c.   Plaintiff has incurred damages for Plaintiff aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety. He has incurred stress with mail advising him that his home will be sold at a public auction.

d.   Plaintiff has incurred attorney fees and costs to obtain an injunction to stop the illegal foreclosure.

e.   Plaintiff has not received tax deductions for interest and taxes paid on the mortgage loan due to the misapplication of payments made.

f.    Plaintiff has incurred attorney fees and costs for the prosecution of this action.

187.   The conduct of US Bank was willful, wanton and reckless, warranting the imposition of punitive damages. It ignored the clearly stated terms of the mortgage, but instead went forward and sought to exercise the statutory power of sale without having accelerated the mortgage loan.

WHEREFORE, Plaintiff demands the following relief:

a.    Damages against US Bank for failure to comply with the terms of the mortgage.

b.    Damages against US Bank for legal fees and damages arising from the breach of contract.

c.    Legal fees from US Bank

d.    Damages for charges to his mortgage loan account which has been charged fees and costs which were not permitted pursuant to the terms of the mortgage.

e.    Actual damages attributable to the aggravation, humiliation, embarrassment, loss of privacy, strain on personal relationships, loss of enjoyment of life, sleepless nights, worry and anxiety and stress suffered by the Plaintiff.

f.    Punitive Damages.

g.    All other just and proper relief.

## COUNT V
## DECLARATORY JUDGMENT

188.   Paragraphs 1-187 are incorporated by reference.

189.   This Court has jurisdiction to issue Declaratory Judgments, pursuant to 28 U.S.C. 2201 et seq.

190.   The purported assignment of mortgage dated July 21, 2016 was void due to the fact that New Century did not own the mortgage on that date and due to the fact that the grantee did not exist.

190.   At no time was Plaintiff's note endorsed by New Century.

191.   Justice Rubine of the Rhode Island Superior Court in the case of Troy *Lebeau vs. New Century et al*, PC 2011-4088  held that:

The particular Note in this case contains an endorsement in blank by Accredited Home Lenders, Inc.

192.   A copy of that Decision is attached as Exhibit E.

192.   The Plaintiff's previous complaint in PC2011-4088 is attached as Exhibit F.

193.   On July 28, 2011, Monika Lemhoefer McCarthy filed Exhibit G in the Plaintiff's previous complaint in PC2011-4088.

194.   As alleged in this complaint, the Trustee for New Century indicated on July 28, 2011 that New Century no longer owned or services any of the loans it originated.

195.   Exhibit G also indicted that Plaintiff's first mortgage was sold to Citigroup in August 2006.

196.   As a result, the assignment of mortgage dated July 21, 2016 was void as New Century owned nothing to assign on that date.

197.   When Wells Fargo responded to Plaintiff's request for information by a letter dated March 28, 2017ecember 4, 2017, it provided the Plaintiff a copy of the promissory note, which was not endorsed. A copy is attached as Exhibit H.

198.   The nonexistent nature of the originally named trust, Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset Backed Pass Through Certificates, Series 2006-NC2 and the fact that New Century had no

ownership interest in Plaintiff's mortgage on July 21, 2016 rendered the purported corrective assignment void.

199. The finding in the Superior Court decision that the Plaintiff's promissory note was endorsed by Accredited Home Lenders, Inc. in blank and the copy of the note provided to the Plaintiff by Wells Fargo on March 28, 2017 support the Plaintiff's allegation that the note was not endorsed by New Century.

200. As a result US Bank owns neither the note nor the mortgage.

Wherefore, the Plaintiff demands that this Court issue a Declaratory Judgement declaring that:

1. The Plaintiff's note was not endorsed by New Century.

2. The corrective assignment of mortgage dated July 21, 2016 is void.

3. The entity known as Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset Backed Pass Through Certificates, Series 2006-NC2 does not exist.

4. US Bank, N.A. is not the trustee for Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset Backed Pass Through Certificates, Series 2006-NC2.

5. Grant all other just and proper relief including attorney fees and costs.

<div style="text-align:right">

TROY LEBEAU
By his Attorney

</div>

June 30, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

Plaintiff demands a Trial by Jury