UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TROY LEBEAU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| U.S. BANK N.A. AS TRUSTEE FOR | ) |
| CITIGROUP MORTGAGE LOAN | ) |
| TRUST INC. 2006-NC2 ASSET | ) |
| BACKED PASS THROUGH | ) |
| CERTIFICATES SERIES 2006-NC2 and | ) |
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |

C.A. No.  1:17-cv-00329-JJM-PAS

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants U.S. Bank N.A. as Trustee for Citigroup Mortgage Loan Trust Inc. 2006-NC2 Asset Backed Pass Through Certificates Series 2006-NC2 ("U.S. Bank, as Trustee") and Wells Fargo Bank, N.A. ("Wells Fargo" and collectively with U.S. Bank, as Trustee "Defendants"), submit this memorandum in support of their motion to dismiss the Second Amended Complaint filed by Plaintiff Troy Lebeau ("Plaintiff") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### INTRODUCTION

Plaintiff has yet again amended his pleadings in an attempt to avoid dismissal.  Although every claim and allegation could have been included in his original Complaint, Plaintiff waited for a year, until filing his third complaint, without providing any justification for why these claims and allegations were previously omitted.  Plaintiff's actions have caused significant delay, prolonging his continued occupation of property for which he has not paid in several years and

forced Defendants into extensive and unnecessary motion practice culminating in this third (and hopefully final) dispositive motion.

The Second Amended Complaint includes a dual tracking claim under the Real Estate Settlement Procedures Act ("RESPA") (Count I).  This claim fails because Wells Fargo did not dual track and there has been no foreclosure sale.  Plaintiff's claim for failure to correct noticed errors under Regulation X (Count II) fails because Wells Fargo timely and sufficiently addressed the perceived error and Plaintiff has not alleged to have suffered actual damages as a result.  Plaintiff's Truth in Lending Act ("TILA") claim for allegedly failing to send compliant monthly mortgage statements (Count III) fails because Wells Fargo was not previously required to send statements where Plaintiff's obligation under the mortgage loan was discharged in bankruptcy.  Further, Plaintiff admits that Defendants have been sending monthly mortgage statements as required under recent amendments to Regulation Z, which implements TILA, yet he fails to allege an injury-in-fact.  Plaintiff's contract-based claim (Count IV) regarding loan payment application fails based upon res judicata and Plaintiff's inability to demonstrate a breach of the mortgage.  Lastly, Plaintiff's declaratory judgment claim (Count V) fails because documents in the public record and attached to the Second Amended Complaint demonstrate that U.S. Bank, as Trustee holds the note and is the mortgagee of record.

Now, after a year and three chances, Plaintiff must actually defend his specious allegations and claims.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff owns 36 Black Plain Road, North Smithfield, Rhode Island (the "Property").  See Sec. Am. Compl., ¶ 1.  On July 17, 2006, Plaintiff executed a note (the "Note") and obtained

---

[1] For purposes of this motion only Defendants accept as true the factual allegations of the Second Amended Complaint.  Defendants, however, reserve their right to challenge those allegations at a later date (as many of them are incomplete, inaccurate, or misleading).

a loan from New Century Mortgage Corporation ("New Century") in the principal amount of $300,000.00 (the "Loan").  See Sec Am. Compl., ¶ 2; Affidavit of Andrea Kruse in Support of State Court Summary Judgment Motion ("Kruse Affidavit"), ¶ 3.[2, 3, 4]  To secure the Loan, Plaintiff granted a mortgage (the "Mortgage") on the Property in favor of New Century.  See Sec. Am. Compl., ¶ 2; Mortgage.[5]  The Mortgage specifies that any notice to Plaintiff in connection with the Mortgage, "shall be deemed to have been given to [Plaintiff] when mailed by first class mail . . . "  See Mortgage, ¶ 15.  The Mortgage also specifies that before the lender can accelerate the debt on the Loan, it must give notice to Plaintiff of his right to cure any default on the Loan.  See Mortgage, ¶ 22.

On February 25, 2009, Wells Fargo, as attorney-in-fact for New Century, assigned the Mortgage (the "Assignment") to U.S. Bank, as Trustee, using the name U.S. Bank National Association, as Trustee for Asset-Backed Pass-Through Certificates, Series 2006-NC2.  See Assignment.[6]  Although the Assignment omitted the complete name of the trust, it correctly identified, U.S. Bank, as Trustee, which has been the mortgagee, at all relevant times, and the correct trust series.  New Century endorsed the Note in blank.  See Note, at 4; Kruse Affidavit, ¶ 8.  Plaintiff defaulted on the Loan by failing to make monthly payments.  See Kruse Affidavit, ¶ 10.  As servicer for U.S. Bank, as Trustee, Wells Fargo sent notice of right to cure correspondence dated July 18, 2010 (the "Notice of Right to Cure") to Plaintiff advising that the Loan was in default and providing the notice required by Paragraph 22 of the Mortgage.  See

---

[2] A copy of the Kruse Affidavit is attached hereto as Exhibit 1.

[3] The Court may consider matters of public record, including documents from prior adjudications in resolving a Rule 12(b)(6) motion to dismiss.  See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (citing In re Colonial Mortgage, 324 F.3d 12, 15–16 (1st Cir. 2003); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir.2000)).

[4] A copy of the Note is attached hereto as Exhibit 1-B.

[5] A copy of the Mortgage is attached hereto as Exhibit 1-A.

[6] A copy of the Assignment is attached hereto as Exhibit 1-C.

Kruse Affidavit, ¶ 3; Supplemental Affidavit of Alissa Doepp in Support of State Court Summary Judgment Motion ("Doepp Affidavit"), ¶ 6;[7] Notice of Right to Cure.[8]  After Plaintiff failed to cure the default, a duly-noticed foreclosure sale was held in the name of the original mortgagee assignee on July 15, 2011.  See Kruse Affidavit, ¶ 10-11.  Due to the incomplete (but accurate) trust name, the sale was rescinded (the "Rescinded Foreclosure"), and on July 21, 2016, Wells Fargo, as attorney-in-fact for New Century, executed a corrective assignment of the Mortgage (the "Corrective Assignment") to U.S. Bank, as Trustee.  See Sec. Am. Compl., ¶ 196; Corrective Assignment.[9, 10]  The Corrective Assignment specifies that it amends the original Assignment, to completely identify the trust for which U.S. Bank, has always been Trustee.  See Corrective Assignment.

*Plaintiff's Bankruptcy*

After defaulting on the Loan, Plaintiff filed a Chapter 7 bankruptcy petition, No. 1:09-bk-12175 (the "Bankruptcy Case") in the U.S. Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court").[11]  In his Chapter 7 petition (the "Bankruptcy Petition"), Plaintiff listed Wells Fargo d/b/a America's Servicing Company as a creditor and the Mortgage on the Property as property of the estate subject to secured claims.  See Bankruptcy Petition, at 20.[12]  Plaintiff listed the Property as having a value of $300,000.00 with a secured mortgage claim of $372,143.00.  See Bankruptcy Petition, at 15.  Plaintiff elected to "surrender" the Property under

---

[7] A copy of the Doepp Affidavit is attached hereto as Exhibit 2.

[8] A copy of the Notice of Right to Cure is attached hereto as Exhibit 2-1.

[9] A copy of the Corrective Assignment is attached hereto as Exhibit 3.

[10] U.S. Bank, as Trustee never recorded a foreclosure deed in the North Smithfield Land Evidence Records.

[11] A copy of the docket for the Bankruptcy Case is attached hereto Exhibit 4.

[12] A copy of the Bankruptcy Petition is attached hereto as Exhibit 5.

the Debtor's Statement of Intentions.[13]   See Bankruptcy Petition, at 47.   In reliance on these representations, the Bankruptcy Court issued a Chapter 7 discharge to Plaintiff on September 1, 2009 and closed the Bankruptcy Case on September 14, 2009.   See Bankruptcy Court docket; Discharge Order.[14]

*Plaintiff's State Court Case*

On July 19, 2011, Plaintiff filed a complaint in Providence Superior Court (the "State Court Case") seeking declaratory judgment and injunctive relief challenging the Rescinded Foreclosure.[15]   Among other things, Plaintiff challenged Wells Fargo's compliance with Paragraph 22 of the Mortgage.   See Decision and Order dated July 22, 2015 (the "Order").[16] After moving for summary judgment, the State Court awarded judgment to Wells Fargo and U.S. Bank, as Trustee on all claims.   See Order and State Court Judgment.[17]   Among other things, the State Court found that U.S. Bank, as Trustee held the Note.   See Order, at 4 ("[T]his Court finds sufficient evidence uncontradicted by any evidence submitted by the Plaintiff that U.S. Bank now holds the Note and is entitled to enforce its terms.").   The Order contains an error regarding the Note's blank endorsement by New Century, incorrectly stating that "[t]he particular Note in this case contains an endorsement in blank by Accredited Home Lenders, Inc."   See Sec. Am. Compl., ¶ 191, Order, at 3.   The authenticated copy of the Note submitted with the Kruse Affidavit and relied upon by the State Court in the Order, contains a blank endorsement from

---

[13] This representation is also consistent with Plaintiff not objecting to Wells Fargo's motion for relief from stay to foreclose.   See Bankruptcy Case docket.

[14] A copy of the Discharge Order is attached hereto as Exhibit 6.

[15] A copy of the docket for the State Court Case is attached hereto as Exhibit 7.

[16] A copy of the Order is attached hereto as Exhibit 8.

[17] A copy of the State Court Judgment is attached hereto as Exhibit 9.

New Century and not Accredited Home Lenders, Inc., an unknown entity that has no involvement with Plaintiff's Loan:



<u>See</u> Note, at 4.

*The Present Action*

After removal to this Court, Defendants moved to dismiss the original Complaint (the "First Motion to Dismiss") on July 31, 2017 [DN 4].   In response, Plaintiff filed a motion requesting permission to file the Amended Complaint (the "First Motion to Amend") [DN 12] to add new claims and allegations.   Defendants opposed the Motion to Amend (the "First Opposition") on November 27, 2017 [DN14].  On December 6, 2017, the Court denied the First Motion to Dismiss as moot without prejudice and allowed the Motion to Amend, noting "[t]he Defendants' objections to the Motion to Amend are based on factual assertions that are not appropriate for an objection to a motion to amend[.]"  Plaintiff filed the Amended Complaint on January 24, 2018 [DN 15].

Defendants moved to dismiss the Amended Complaint (the "Second Motion to Dismiss") on February 7, 2018 [DN 16].  After numerous extensions, Plaintiff responded on June 30, 2018 by filing a Motion to File Second Amended Complaint ( the "Second Motion to Amend") [DN 24] and an opposition to the Second Motion to Dismiss on July 3, 2018 [DN 25].   Defendants filed a reply in support of their Second Motion to Dismiss ("Reply") [DN 28], and they opposed the Second Motion to Amend (the "Second Opposition") [DN 29].  By text order dated August 14, 2018, the Court granted the Second Motion to Amend and denied the Second Motion to

Dismiss without prejudice as moot on the grounds that it would be more efficient for Defendants to file a single motion to dismiss containing all the arguments raised the Second Motion to Dismiss, Reply, and Second Opposition.  On August 16, 2018, the Court entered the Second Amended Complaint in the record [DN 30].

*Causes Of Action And New Allegations In The Second Amended Complaint*

In Count I, Plaintiff alleges that Wells Fargo violated Regulation X (codified as 12 C.F.R. § 1024), which implements RESPA, by "dual tracking."  <u>See</u> Sec. Am. Compl., ¶¶ 34 & 36. Specifically, Plaintiff alleges that he received a foreclosure sale notice dated May 12, 2017 informing him of a July 6, 2017 sale.  <u>See</u> Sec. Am. Compl., ¶ 30.  Plaintiff further alleges that he submitted a "facially complete" loss mitigation application on May 18, 2017, and concludes that Wells Fargo was thereafter prohibited from scheduling and advertising a foreclosure sale on July 6, 2017."  Sec. Am. Compl., ¶¶ 31 & 35.  Plaintiff has not and cannot allege that a foreclosure sale has occurred on July 6, 2017 or any time thereafter.  Count I in the Second Amended Complaint is the same as Count I of the Amended Complaint.

In Count II, Plaintiff alleges (as he did in the Amended Complaint) that Wells Fargo violated RESPA by failing to adequately respond to a notice of error purportedly sent under 12 C.F.R. 1024.35.  On March 21, 2017 Plaintiff sent a request for information ("RFI") to Wells Fargo seeking among other things, a copy of the transaction history for the loan.  <u>See</u> Sec. Am. Compl., ¶ 41; RFI.[18]  Wells Fargo responded on March 28, 2017 ("RFI Response") and included a copy of Plaintiff's transactional history along with several other documents.  <u>See</u> Sec. Am. Compl., ¶¶ 44-45; RFI Response.[19, 20]  Thereafter, Plaintiff sent Wells Fargo a purported notice

---

[18] A copy of the RFI is attached hereto as Exhibit 10.

[19] A copy of the RFI Response is attached hereto as Exhibit 11.

of error under 12 C.F.R. 1024.35 ("NOE I") mistakenly asserting that Wells Fargo did not send a copy of the transaction history.  See Sec. Am. Compl., ¶¶ 41-44; NOE I.[21]  Wells Fargo responded to the NOE on June 27, 2017 ("NOE I Response") and included a complete copy of the transaction history, noting that it had included the transaction history for March 26, 2014 - March 14, 2017 in its RFI Response.  See Sec. Am. Compl., ¶ 43; NOE I Response.[22]  Plaintiff now alleges in numerous identical paragraphs in the Second Amended Complaint to have sent a second notice of error ("NOE II") to Defendants on or about November 4, 2017.  See Sec. Am. Compl., ¶¶ 54, 68, 82, 96, 110, 124.  Wells Fargo responded on November 15, 2017 and December 4, 2017 (the "NOE II Responses").  See Sec. Am. Compl., ¶¶ 60, 74, 88, 102, 116, 130, Exs. C & D.  Plaintiff seeks the same cut-and-paste relief for every repeated allegation.  See e.g., Sec. Am. Compl., ¶¶ 61 - 65, 75 - 79, 89 - 93, 103 - 107, 117 - 121, 131 - 135.

In Count III (Regulation X and RESPA) of the Second Amended Complaint, Plaintiff alleges (as he did in the Amended Complaint) that Defendants failed to send him periodic mortgage statements in conformity with 15 U.S.C. § 1638(f)(1).  See Sec. Am. Compl., ¶¶ 140 & 148.  He also alleges to have made eight payments between May 21, 2009 and November 28, 2016 and that Defendants did not properly apply them according to the terms of the Mortgage. See Sec. Am. Compl., ¶¶ 151-152.  The Second Amended Complaint contains new and further allegations regarding amendments to Regulation Z, which became effective on April 19, 2018. See Sec. Am. Compl., ¶¶ 155 - 174.  This claim also contains new allegations that Wells Fargo

---

[20]  As noted in the RFI Response, Wells Fargo sent several documents to Plaintiff including copies of, 1) the underlying mortgage (the "Mortgage") and all assignments; 2) the note; 3) transaction history (referred to as account history); 4) loan information report; 5) conversations with Wells Fargo; 5) customer correspondence; and 6) the RFI. Only the transaction history is included with the RFI Response as it is the only document at issue.

[21]  A copy of NOE I is attached hereto as Exhibit 12.

[22]  A copy of the NOE I Response is attached hereto as Exhibit 13.

has been sending periodic statements to Plaintiff's counsel, including a statement received by Plaintiff's counsel on May 22, 2018.  See Sec. Am. Compl., ¶¶ 163, 165, 166.

In Count IV (breach of the covenant of good faith and fair dealing), Plaintiff appears to have removed several allegations, including those related to the Notice of Right to Cure (see Am. Compl., ¶¶ 77-79) and challenge to the Assignment (see Am. Compl., ¶ 86), and now focuses entirely on alleged misapplication of payments.  See Sec. Am. Compl., ¶¶ 177 - 185.

Count V contains a new claim based almost entirely on documents from the State Court Case that are public records that have been available to Plaintiff for years, yet not included or referenced in the Complaint or Amended Complaint.  Plaintiff seeks a declaratory judgment that New Century did not endorse the Note and that the corrective mortgage assignment dated July 21, 2016 is void.  See Sec. Am. Compl., at 34, "Wherefore."

ARGUMENT & AUTHORITIES

## I.      The Rule 12(b)(6) Standard.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted.  The United States Supreme Court clarified and, seemingly heightened, the Rule 8 pleading requirements when it expressly rejected the oft-cited "no set of facts" language of Conley v. Gibson, 355 U.S. 41 (1957).  See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007).  "The [no set of facts] phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard.  Now, in order to survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1955.  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1955 (internal citations omitted).

In determining the sufficiency of a complaint under Rule 12(b)(6), the Court is not hamstrung by Plaintiff's omission of critical facts and documents.  See Beddall v. State St. Bank & Tr. Co., 137 F. 3d 12, 17 (1st Cir. 1998).  The Court may consider documents not attached to a complaint on a motion to dismiss when their authenticity is not disputed or when they are central to a plaintiff's claims.  See Watterson v. Page, 987 F. 2d 1, 3 (1st Cir. 1993).  In particular, the RFI, RFI Response, NOE, and NOE Response may be considered on this motion to dismiss because: 1) Plaintiff does not challenge their authenticity; and 2) they are referenced in the Amended Complaint and central to Plaintiff's claims.  While the Court allowed the Motion to Amend because "Defendants' objections to the Motion to Amend [we]re based on factual assertions that are not appropriate for an objection to a motion to amend[,]" the Court may now consider these critical factual details under First Circuit precedent.

## II.   **Count I Fails As A Matter Of Law Because There Has Been No Foreclosure Sale.**

Regulation X prohibits a servicer from *conducting* a foreclosure sale during the review of a complete loss mitigation application received at least 37 days before a scheduled sale.  See 12 C.F.R. § 1024.41(g).  An application is "facially complete" when "a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice [of a complete application]."  12 C.F.R. § 1024.41(c)(2)(iv).  Accordingly, "facial completeness" depends upon either a servicer's notice sent after reviewing an application or the submission of a "complete" application, which means

one where the servicer has received all information from the borrower required to complete an evaluation.  See 12 C.F.R. § 1024.41(b)(1).  Plaintiff does not allege to have submitted a complete loss mitigation application.

Count I fails for the simple reason that no foreclosure sale has been conducted.  12 C.F.R. § 1024.41(g) prohibits conducting a foreclosure sale while a servicer reviews a complete loss mitigation application.  There can be no violation without a foreclosure sale.  It is not a violation of this section to notice a foreclosure sale, especially where the notice precedes the submission of a loss mitigation application.  Further, Plaintiff has not alleged submitting a complete application as required by this section.  In order for a "facially complete" application to be treated as "complete," Plaintiff must allege that 1) he submitted additional documents requested by Wells Fargo; 2) Wells Fargo provided notice that no additional documents were needed; or 3) Wells Fargo was required to provide notice of complete application.  Plaintiff has made no such allegations.  For these reasons, Count I should be dismissed.

## III.   Plaintiff Fails To Allege A RESPA Claim In Count II Due To Wells Fargo's Demonstrated Compliance And Plaintiff's Lack Of Damages.

Plaintiff's claim of non-compliance with Regulation X by failing to sufficiently respond to requests for information and notices of error is belied by the information contained in Wells Fargo's RFI Response and NOE Responses.  Compare Sec. Am. Compl., ¶¶ 45 - 49 with the RFI Response and the NOE I Response.  Contrary to Plaintiff's allegations, Wells Fargo responded to and addressed Plaintiff's requests in accordance with RESPA, including producing a complete transaction history.  See RFI Response and NOE I Response.  Wells Fargo did not violate RESPA.  The RFI Response and NOE Response demonstrate compliance with RESPA.

Ignoring RESPA responses that included supporting documentation and blanketly asserting violations is not sufficient to establish an actual RESPA violation.  See e.g., Plaintiff's

Opposition to Second Motion to Dismiss, at 5 (citing to Am. Compl., ¶ 48 for proposition that Wells Fargo did not provide all documents requested).  RESPA does not require a loan servicer to respond to requests that are duplicative, overbroad, and unduly burdensome.  See 12 C.F.R. § 1024.36(f)(1)(i) & (iv).  Plaintiff fails to plead facts in the Second Amended Complaint that demonstrate his loan servicer did not reasonably determine that his requests were duplicative, overbroad, or unduly burdensome.  Wells Fargo provided numerous documents and stated that the remaining requests were duplicative and overbroad.  See RFI Response, NOE I Responses, NOE II Responses.  Accordingly, the documents referred to and relied upon in the Amended Complaint demonstrate compliance with RESPA and Regulation X.

Separate and aside from Wells Fargo's demonstrable compliance with RESPA, Plaintiff fails to sufficiently allege damages to support a RESPA claim.  In order for a plaintiff to recover under RESPA he "must also plead either actual damages (demonstrable damages that occur 'as a result of' the specific violation complained of) or statutory damages (requiring the showing of a 'pattern or practice of noncompliance' by the servicer)."  Kassner v. Chase Home Fin., LLC, No. CIV.A. 11-10643-RWZ, 2012 WL 260392, at *7 (D. Mass. Jan. 27, 2012) (quoting 12 U.S.C. §§ 2605(f)(1)(A)-(B)); see Mantz v. Wells Fargo Bank, N.A., No. 09–12010–JLT, 2011 WL 196915, at *5 (D. Mass. 2011) (dismissing RESPA claim for failure to plead actual damages); In re Holland, No. 04–18099–JNF, 2008 WL 4809493, *9 (Bankr. D. Mass. 2008) (granting summary judgment against debtor, in part, for failure to establish actual or statutory damages arising from lack of a response to RESPA request).  Attorney's fees and associated costs to assert a RESPA claim are not actual damages under the statute.  See Kassner, 2012 WL 260392 at *7 (collecting cases).

Further, this Court has expressly addressed the RESPA damages requirement, "RESPA requires a plausible allegation of actual money damages specifically caused by the violation[.]" Avedisian v. Select Portfolio Servicing, Inc., No. CV 16-654S, 2017 WL 6334123, at *6 (D.R.I. Aug. 29, 2017), report and recommendation adopted, No. CV 16-654 WES, 2017 WL 6343644 (D.R.I. Dec. 11, 2017) (citing Jones v. Bank of New York, No. CIV.A. 12-11503-RWZ, 2013 WL 3728382, at *5 (D. Mass. July 12, 2013) ("Jones cannot recover on this count because he fails to plead any actual damages from BANA's failure to respond."); see In re Holland, No. 04-18099-JNF, 2008 WL 4809493, at *9 (Bankr. D. Mass. Oct. 30, 2008) ("Even if the Debtor had established a valid RESPA claim against EMC, she failed to establish causation or damages arising from EMC's lack of a response to her QWR.").

Here, Plaintiff fails to sufficiently allege damages.  Plaintiff's alleged damages include attorney's fees and costs strictly related to asserting this RESPA claim.  See Sec. Am. Compl., ¶¶ 55a-d.  These are not "actual damages" under RESPA.  See Kassner, 2012 WL 260392 at *7. Failure to allege actual damages is fatal to Plaintiff's claim.  Further, Plaintiff fails to sufficiently allege a pattern and practice of violation where the sole basis for the claim, the RFI Response and NOE Response, demonstrate compliance with RESPA.  Thus, there is no basis to award actual or statutory damages.  See 12 U.S.C. §§ 2605(f)(1)(A)-(B).

## IV.    **Count III Fails Because The Applicable Version Of TILA Did Not Apply Where Plaintiff Received A Discharge Of His Mortgage Debt In Bankruptcy.**

Plaintiff alleges that Defendants violated TILA by failing to send him periodic mortgage statements under 15 U.S.C. § 1638(f)(1).  Plaintiff, however, was not entitled to periodic statements under the prior version of Regulation Z (effective through April 18, 2018) because he obtained a discharge of his mortgage debt in 2009.

TILA requires that "[t]he creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the *obligor*, for each billing cycle, a statement . . . " 15 U.S.C. § 1638(f)(1). <u>See</u> <u>also</u> 12 C.F.R. 1026.41. If a borrower obtains a discharge from the debt for which he claims that a periodic statement is required, however, the borrower is no longer an obligor entitled to periodic statements. <u>See</u> 12 C.F.R. 1026.41(e)(5). Indeed, the Consumer Financial Protection Bureau's Official Staff Commentary states "[t]he periodic statement is not required for any portion of the mortgage debt that is discharged under applicable provisions of the U.S. Bankruptcy Code." <u>See</u> <u>Consumer Financial Protection Bureau's Official Staff Commentary on Regulation Z</u>, 2014 WL 2195855, at *8 (2017); <u>see</u> <u>also</u> 12 C.F.R. § Pt. 1026, Supp. I, Part 3 (official interpretation of § 1026.41(e)(5) explains that "[t]he periodic statement is not required for any portion of the mortgage debt that is discharged under applicable provisions of the U.S. Bankruptcy Code."). Following this guidance, courts have ruled that borrowers are not entitled to periodic statements under Section 1638(f) of TILA after receiving a bankruptcy discharge. <u>See</u> <u>Pemental v. Bank of New York Mellon for Holders of Certificates , First Horizon Mortg. Pass-Through Certificates Series FHAMS 2004-AA5</u>, No. CV 16-483S, 2017 WL 3279015, at *1 (D.R.I. May 10, 2017), report and recommendation adopted sub nom. <u>Pemental v. Bank of New York Mellon</u>, No. CV 16-483 S, 2017 WL 3278872 (D.R.I. Aug. 1, 2017) (explaining that a TILA claim for failure to provide periodic statements is not "viable when the law is clear that periodic statements are not required for a discharged loan."). <u>Accord</u> <u>In re McConnie Navarro</u>, 563 B.R. 127, 146 (Bankr. D.P.R. 2017) (citing commentary).

Plaintiff received a discharge of his obligation on his mortgage loan on September 1, 2009. <u>See</u> Discharge Order. Accordingly, Wells Fargo was no longer obligated to send him

periodic statements.  See Pemental, 2017 WL 3279015, at *7.  Since Plaintiff was not entitled to receive periodic statements, Defendants cannot be liable for an alleged failure to send them.

**V.     Count III Still Fails In Light Of Recent Regulation Z Amendments Because Plaintiff Admits Defendants Sent Periodic Statements And Plaintiff Fails to Allege An Injury-In-Fact.**

Although Defendants had no obligation to do so, Plaintiff admits in the Second Amended Complaint that Defendants did in fact send monthly statements to him through his counsel.  See Sec. Am. Compl., ¶ 163.  Since TILA has been amended to clarify that the exception for sending periodic statements to discharged debtors (effective April 19, 2018), Plaintiff alleges to have received one periodic statement.  See Sec. Am. Compl., ¶ 166.  While Plaintiff baldly challenges the accuracy of the amounts included in this statement with conclusory allegations, he does not challenge Defendants' compliance with TILA.  See Sec. Am. Compl., ¶ 167.  Sending a statement to a borrower's counsel after he provides notice of representation does not violate TILA.  See e.g., RFI Response (acknowledging representation and requirement to send standard account correspondence including monthly statements).  Accordingly, his claim fails.

Further, Plaintiff fails to allege an injury-in-fact related to this single statement as required to recover under TILA.  See Pemental v. Bank of New York Mellon for Holders of Certificates, First Horizon Mortg. Pass-Through Certificates Series FHAMS 2004-AA5, No. CV 16-483S, 2017 WL 3279015, at *8 (D.R.I. May 10, 2017), report and recommendation adopted sub nom. Pemental v. Bank of New York Mellon, No. CV 16-483 S, 2017 WL 3278872 (D.R.I. Aug. 1, 2017).   Although Defendants have only recently been required to send periodic statements under TILA, Plaintiff has not been injured as a result of a single periodic statement.  To the extent that Plaintiff challenges the assessed fees and application of payments for his loan, as he has done in the Amended Complaint, he cannot allege to have been separately injured by receiving a periodic statement containing information that he has already disputed in this case.

The actual damages plaintiff alleges to have suffered (gasoline for attorney visits, postage, attorney fees) are not the result of receiving the single periodic statement, but rather are expenses incurred to assert claims and litigate this case, which are not a substitute for a TILA injury-in-fact. See id. Accordingly, Count III fails as a matter of law.

## VI.   **Plaintiff's Breach Of The Covenant Of Good Faith And Fair Dealing Claim Fails As A Matter Of Law.**

"Under Rhode Island law, it is well settled that there is an implied covenant of good faith and fair dealing between parties . . . so that the contractual objectives may be achieved. Rhode Island law does not recognize an independent tort action based on breach of the implied duty of good faith; nevertheless, on a theory of contract law, a plaintiff is entitled to expectation damages against a party who failed to use best efforts to fulfill a promise." T.G. Plastics Trading Co. Inc. v. Toray Plastics (Am.), Inc., 958 F. Supp. 2d 315, 326 (D.R.I. 2013) (internal quotations and citations omitted). Res judicata bars Plaintiff's claims that were or could have been resolved in the State Court Case, including any alleged misapplication of payments made during the relevant time period (2011 and earlier). Plaintiff fails to allege how any purported payment was not properly credited under the terms of the Mortgage.

### A.   *Res Judicata Bars Plaintiff's Premised Upon Any Payment Made Before The State Court Case.*[23]

On July 19, 2011, Plaintiff filed the State Court Case, where he asserted a host of claims based upon his loan and Mortgage. The State Court specifically found that Plaintiff received the notice required by Paragraph 22 of the Mortgage. Plaintiff is accordingly barred by res judicata

---

[23] Defendants adopt by reference their arguments raised in the Second Motion to Dismiss and the Reply addressing res judicata.

from reasserting this claim[24] or any claim that could have been asserted in the State Court Case based on conduct occurring prior to July 19, 2011, including claims based upon alleged loan payments made in 2010 and 2009.[25]  See Sec. Am. Compl., ¶ 180.

### B. *Plaintiff Fails To State A Claim For Misapplication Of Loan Payments.*

Although Plaintiff alleges to have made some loan payments after the State Court Case (November 1 & 28, 2016), he fails to allege how these payments were not applied according to the terms of Mortgage.  Plaintiff does not dispute that his mortgage loan is default for his failure to make monthly payments and the Mortgage expressly allows the lender to return, refuse to accept, or accept without applying, any payment or partial payment that does not bring the loan current.  See Sec. Am. Compl., ¶¶ 12, 180; Mortgage, ¶ 1.  Further, the Mortgage expressly provides that the lender may protect its security interest in the Property, including by conducting inspections, and that any sums disbursed for this purpose become additional debt of Plaintiff. See Mortgage, ¶¶ 9, 14.  Lastly, the Mortgage allows the lender to recover foreclosure expenses, including reasonable attorney's fees, where Plaintiff defaults on the Loan and does not cure his default, as is the case here.  See Mortgage, ¶ 22.  Plaintiff fails to allege how the purported payments were applied or how the purported application breached any term of the Mortgage. Without a breach, there can be no contract-based claim, including that asserted in Count IV.

---

[24] Plaintiff appears to have abandoned the Paragraph 22 claim.  To the extent he has not, Defendants refer to their arguments raised in the Second Motion to Dismiss addressing this claim and reserve their rights to further address this claim in a reply brief to this motion as necessary.

[25] The Rhode Island Supreme Court has explained, collateral estoppel bars the same claim being raised in a subsequent action "between the parties to an original action and those in privity with such parties," while "res judicata bars the relitigation of all the issues that were tried or might have been tried in the original suit." Providence Teachers Union, Local 958, Am. Fed'n of Teachers, AFL-CIO v. McGovern, 113 R.I. 169, 172, 319 A.2d 358, 361 (1974) (citing Perez v. Pawtucket Redevelopment Agency, 111 R.I. 327, 335, 302 A.2d 785, 790 (1973); Goloskie v. Sherman, 108 R.I. 730, 733, 279 A.2d 409, 411 (1971); see DiPinto v. Sperling, 9 F. 3d 2, 4 (1st Cir. 1993) ("Mutuality of parties is not essential to a collateral estoppel defense under Rhode Island law.").

**VII.** **Count V Is Belied By the Information Contained In the Public Record And Documents Attached To the Second Amended Complaint.**

In his third pleading, Plaintiff now seeks a declaration that U.S. Bank, as Trustee is not the noteholder or mortgagee of record.  However, the documents from the State Court Case including those attached to the Second Amended Complaint belie this claim.  U.S. Bank, as Trustee holds the Note that was endorsed in blank by new Century.  Similarly, U.S. Bank, as Trustee has also held the mortgage since 2009 irrespective of the corrective assignment that clarified the Citibank trust name.

     *A.*     *U.S. Bank, as Trustee Is the Noteholder.*

To the extent that Plaintiff challenges U.S. Bank, as Trustee's ownership of the loan based upon the Note, that challenge is solely based on a clerical error from the Order in the State Court Case.  Specifically, the State Court Order states, "[t]he particular Note in this case contains an endorsement in blank by Accredited Home Lenders, Inc."  See Sec. Am. Compl., ¶ 191, Ex. E, at 3.  However, the copy of the authenticated note filed with the State Court, and necessarily relied upon in the State Court Order, contained an endorsement in blank by New Century, the original lender.  This makes complete sense because New Century was the lender for the Loan and original payee for the Note.  Accredited Home Lenders, Inc. is not now or ever alleged to have had any role with Plaintiff's Loan.  Given the record of undisputed facts, the mentioning of Accredited Home Lenders, Inc. in the State Court Order was simply an oversight by the State Court; the Order should have stated that the note was endorsed in blank by New Century. Regardless, however, the oversight does nothing to advance Plaintiff's claims in this case.

     *B.*     *U.S. Bank, as Trustee Is the Mortgagee of Record.*

Similar to Plaintiff's note challenge, his attempt to demonstrate that U.S. Bank, as Trustee is not the mortgagee of record is also unavailing.  This attempt is based upon a letter

from New Century filed in the State Court Action, which states that New Century sold Plaintiff's mortgage loan to Citigroup in August 2006 and that Wells Fargo (d/b/a America's Servicing Company) became the servicer for the loan on November 1, 2006.  See Sec. Am. Compl., ¶ 193, Ex. G.  Despite Plaintiff's contrary assertions, this information confirms U.S. Bank, as Trustee's ownership of the Loan as trustee for the Citigroup trust.  After New Century sold the loan to the Citigroup trust, New Century later assigned the mortgage to U.S. Bank, as Trustee on February 25, 2009.  See Assignment.  The Corrective Assignment was later recorded to correct the incomplete Citigroup trust name listed in the Assignment.  See Corrective Assignment.

Plaintiff's unsupported attack on the Corrective Assignment is not only belied by the public documents filed in the State Court Action, it is also contrary to Rhode Island Supreme Court precedent that allows corrective assignments to remedy errors in prior mortgage assignments.   Under Rhode Island law, a "corrective assignment is an accepted means of remedying errors in an assignment."   Pimentel v. Deutsche Bank Nat'l Tr. Co., 174 A.3d 740, 745 (R.I. 2017).   When Wells Fargo executed the Corrective Assignment on behalf of New Century, it was simply remedying an error in the Assignment, as permitted under Rhode Island law, and not assigning the Mortgage to U.S. Bank, as Trustee for the first time as alleged in the Second Amended Complaint.[26]  See Sec. Am. Compl., ¶ 196.  Indeed, U.S. Bank, as Trustee has held the Mortgage since 2009, irrespective of the way the Citigroup trust may have been referenced in a recorded mortgage assignment.   None of the allegations in, or documents

---

[26] Even if New Century had assigned the mortgage to U.S. Bank, as Trustee for the first time in 2016, it would still be a valid assignment because U.S. Bank, as Trustee held the Note.  It is a fundamental principle that "the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage."   Galvin v. U.S. Bank, N.A., 852 F.3d 146, 156 (1st Cir. 2017) (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 53–54 (2011)); see Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1087-88 (R.I. 2013) ("As nominee, MERS 'holds bare legal title' to the mortgage and is acting on behalf of, and at the direction of, the note owner . . . . the mortgagee is an equitable trustee who holds bare legal title to the mortgaged premises in trust for the noteholder.").

attached to, the Second Amended Complaint support Plaintiff's legal conclusion that the Corrective Assignment is void. U.S. Bank has held the Mortgage since at least 2009 when the Assignment was recorded. The later corrected trust name in the Assignment changes nothing.

Where Plaintiff has failed to allege facts in the Second Amended Complaint that refute the validity of the Corrective Assignment or U.S. Bank, as Trustee's status as holder of the Note, which has been endorsed in blank by New Century, Count V fails as a matter of law.

CONCLUSION

For the foregoing reasons, this Court should: (1) allow Defendants' motion to dismiss Plaintiff's Second Amended Complaint; (2) dismiss the Second Amended Complaint with prejudice; and (3) grant such other relief as the Court deems just and equitable.

Respectfully submitted,

U.S. BANK N.A. AS TRUSTEE FOR
CITIGROUP MORTGAGE LOAN TRUST
INC. 2006-NC2 ASSET BACKED PASS
THROUGH CERTIFICATES SERIES
2006-NC2 and
WELLS FARGO BANK, N.A.,

By their counsel,

*/s/ David E. Fialkow*
David. E. Fialkow (Bar No. 9318)
david.fialkow@klgates.com
Edward J. Mikolinski (Bar No. 9035)
edward.mikolinski@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
+1 617 261 3100
Dated:  August 30, 2018          +1 617 261 3175 (f)

## CERTIFICATE OF SERVICE

I, David E. Fialkow certify that the foregoing filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 30th day of August 2018.

/s/ David E. Fialkow
David E. Fialkow