UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TROY LEBEAU,

    Plaintiff,

v.

U.S. BANK, N.A. AS TRUSTEE FOR
CITIGROUP MORTGAGE LOAN
TRUST INC. 2006-NC2 ASSET
BACKED PASS THROUGH
CERTIFICATES SERIES 2006-NC2
and WELLS FARGO BANK, N.A.,

    Defendants.

CA No. 17-329-JJM-PAS

## ORDER

Before the Court is Defendants' joint Motion to Dismiss Plaintiff Troy Lebeau's Second Amended Complaint under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim. ECF No. 31. After reviewing the submitted materials and considering the established caselaw on mortgage litigation in Rhode Island, the Court GRANTS the motion.

Mr. Lebeau bought the house in North Smithfield, Rhode Island in July 2006. He granted a $300,000.00 mortgage to New Century Mortgage Corporation. ECF No. 31-2 at 6-26.[1] He executed a note in favor of New Century secured by the mortgage. *Id.* at 28-31. New Century endorsed the note in blank. *Id.* at 31. Wells Fargo Bank,

---

[1] Ordinarily, when citing to Electronic Case Filing documents, the Court cites to the page number on the original document. In this case, because both parties attached multiple documents to their pleadings and each document is paginated, the Court will cite to the ECF page number in order to avoid confusion.

N.A. Attorney-in-Fact for New Century executed an assignment of mortgage, assigning the mortgage to U.S. Bank National Association, as Trustee for Asset-Backed Pass-Through Certificates, Series 2006-NC2. *Id.* at 33. Mr. Lebeau defaulted on the mortgage loan by failing to make timely monthly payments.

Meanwhile, Mr. Lebeau filed a Chapter 7 bankruptcy petition, electing to surrender the property. The Bankruptcy Court issued a Chapter 7 discharge and closed the case shortly thereafter. Wells Fargo as servicer for the trustee U.S. Bank sent a notice of right to cure to Mr. Lebeau, advising that the loan was in default. Mr. Lebeau did not cure the default and Wells Fargo scheduled a foreclosure sale but, because of an incomplete trust name[2] listed in the assignment, Wells Fargo cancelled that sale, and a corrective assignment was latter executed, identifying the complete trust name and U.S. Bank as trustee.

A year later, Mr. Lebeau filed a lawsuit in state court to challenge the rescinded foreclosure. That court granted defendants' motion for summary judgment, finding that U.S. Bank held Mr. Lebeau's mortgage and note and could enforce its terms as such. ECF No. 46-2 at 4-5. In its order, however, the court mistakenly stated that Accredited Home Lenders, Inc. endorsed the note in blank by even though AHL was never alleged to be involved in Mr. Lebeau's loan. *Id.* at 4. In fact, the

---

[2] The original assignment named U.S. Bank National Association, as Trustee for Asset-Backed Pass-Through Certificates, Series 2006-NC2 as assignee. The corrective assignment filed in lists U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust, Inc. 2006-NC2, Asset-Backed Pass-Through Certificates, Series 2006-NC2 as assignee.

papers attached to the state court record showed an endorsement in blank by New Century, the original lender.

Mr. Lebeau then filed the present action. Defendants Wells Fargo and U.S. Bank have moved to dismiss twice; both times, Mr. Lebeau moved to amend the complaint and the Court granted the motions. The Second Amended Complaint ("Complaint") is now the operative Complaint (ECF No. 30) and Defendants have again moved to dismiss it.

## STANDARD OF REVIEW

In reviewing a motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *See Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008); *McCloskely v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006). To withstand "a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-87 (2009). "[A] plaintiff . . . is . . . required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobile Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

Moreover, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As these mortgage foreclosure cases tend to be document heavy, the Complaint incorporates many documents into the complaint and both sides rely on documents outside the four corners of the complaint. "Under First Circuit precedent, when 'a complaint's factual allegations are expressly linked to and admittedly dependent upon a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 38 (1st Cir. 2005) (alteration in original) (quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001)). So, the Court will consider both incorporated and appended documents.

## ANALYSIS OF CLAIMS

I. Count I–Violation of the Real Estate Settlement and Procedures Act (RESPA)

In Count I, Mr. LeBeau asserts that 12 C.F.R. § 1024, specifically Regulation X, prohibits a servicer from conducting a foreclosure sale during a loss mitigation application review received at least 37 days before a scheduled sale–he alleges this is dual tracking. In response, Wells Fargo argues that this claim should be dismissed because merely noticing a foreclosure sale does not violate the regulation, a submitted loss mitigation application must be complete, not just facially complete, and the noticed foreclosure sale did not go forward.

4

In his case, Mr. Lebeau alleges that he received a May 12, 2017 foreclosure sale notice informing him of a July 6, 2017 sale. He then submitted a facially complete loss mitigation application on May 18, 2017. ECF No. 30 at ¶ 18. Wells Fargo received it on May 22, 2017. *Id.* This is 57 days before the purported sale date. *Id.* at ¶ 32. According to Regulation X, Wells Fargo had to review this package because it received it more than 37 days before the sale. *Id.* at ¶ 33. He alleges that he never heard from Wells Fargo that it needed any additional documents but does not allege that he ever submitted anything more to complete his application. *Id.* at ¶ 17. The problem with this timeline is that Wells Fargo noticed the foreclosure six days before Mr. Lebeau started the loss mitigation process by submitting a facially complete loss mitigation package. Wells Fargo cannot be accused of dual tracking when it noticed the foreclosure sale before ever receiving any paperwork from Mr. Lebeau. Regulation X only prohibits a servicer from completing a foreclosure sale, not just noticing it. There is no dispute that Wells Fargo never completed the foreclosure sale so there can be no Regulation X violation. The Court dismisses Count I.

II. Count II--RESPA

Mr. Lebeau brings a second claim under RESPA rooted in failed communication about his loan's servicing. "RESPA aims to promote transparency and communication between borrowers and lenders. To that end, the statute requires that servicers of mortgage loans respond to inquiries from borrowers about their loans within a set amount of time." *McGahey v. Fed. Nat'l Mtg. Ass'n*, 266 F. Supp. 3d 421,

438 (D. Me. 2017) (citations omitted). RESPA requires servicers to respond to a borrower's qualified written request (QWR). A QWR is a "written correspondence" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either asserts an error in the borrower's account or requests information related to the servicing of the borrower's account. 12 U.S.C. § 2605(e)(1).

Once a servicer receives a QWR, it must "provide a written response acknowledging receipt of the correspondence within 5 [business] days." *Id.* at § 2605(e)(1)(A). Then, within 30 business days, the servicer must (1) correct the error; (2) explain why it believes the account is correct; (3) provide the requested information; or (4) explain why the requested information is unavailable. *Id.* at § 2605(e)(2). Now that a servicer's obligations to a borrower under RESPA are set forth, the Court will look to the elements of a claim under RESPA.

To state a claim for a violation of RESPA, a plaintiff must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to respond adequately within the statutory period, and (4) the plaintiff is entitled to actual or statutory damages. *See id.* at § 2605. A loan servicer who fails to respond to a QWR is liable for the failure, but a borrower is limited to actual damages unless the failure to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements. *See id.* at § 2605(f)(1)(B).

Mr. Lebeau alleges that he made seven separate QWRs for information. It appears that he sent one QWR on March 21, 2017, five QWRs on March 23, 2017, and

6

one on May 22, 2017. According to the Complaint, Wells Fargo acknowledged those QWRs, but did not provide the requested documents and asserted that the requests were duplicative and overbroad. And, when Wells Fargo failed to provide the information requested, he sent Notices of Error (NOEs) to Wells Fargo, asking them to correct the errors by providing the requested documents pursuant to 12 C.F.R. § 1024.35.[3] This section of RESPA requires mortgage servicers to respond to a

---

[3] According to his Complaint, (1) Mr. Lebeau sent a QWR on March 21, 2017 seeking a transactional history of the mortgage loan. Wells Fargo responded by letter on March 28, 2017 but did not provide the documents. Mr. Lebeau sent a NOE on June 13, 2017. Wells Fargo responded on June 27, 2017, but did not provide the documents, saying the request was overly broad; (2) Mr. Lebeau sent a second QWR on March 23, 2017 seeking the identity and address for the master servicer of the mortgage loan. Wells Fargo responded by letter on March 28, 2017 but did not provide documents and stated that the request was overly broad. Mr. Lebeau sent a NOE on November 4, 2017. Wells Fargo responded on November 15, 2017 and December 4, 2017 but did not provide the information requested and stated that the request was overly broad; (3) Mr. Lebeau sent a third QWR on March 23, 2017 seeking periodic monthly statements for the mortgage loan. It is unclear if Wells Fargo responded to this QWR. Mr. Lebeau sent a NOE on November 4, 2017. Wells Fargo responded on November 15, 2017 and December 4, 2017, but did not provide the information requested and stated that the request was overly broad; (4) Mr. Lebeau sent a fourth QWR on March 23, 2017 seeking the information about the contractual status of the mortgage loan account when Wells Fargo became the servicer. It is unclear if Wells Fargo responded to this QWR. Mr. Lebeau sent a NOE on November 4, 2017. Wells Fargo responded on November 15, 2017 and December 4, 2017 but did not provide the information requested and stated that the request was overly broad; (5) Mr. Lebeau sent a fifth QWR on March 23, 2017 seeking the mortgage loan servicing file. It is unclear if Wells Fargo responded to this QWR. Mr. Lebeau sent a NOE on November 4, 2017. Wells Fargo responded on November 15, 2017 and December 4, 2017 but did not provide the information requested and stated that the request was overly broad; (6) Mr. Lebeau sent a sixth QWR on March 23, 2017 seeking information about the status at the time of the default and all default notices sent to him. It is unclear if Wells Fargo responded to this QWR. Mr. Lebeau sent a NOE on November 4, 2017. Wells Fargo responded on November 15, 2017 and December 4, 2017, but did not provide the information requested and stated that the request was overly broad; and (7) Mr. Lebeau sent a seventh QWR on May 22, 2017 seeking information about all loss mitigation options and asking whether he needed

properly submitted NOE by correcting the error or investigating the error and providing a written notification that no error occurred. *See id.* § 1024.35(e).

The Court notes that the allegations in the Complaint relating to these QWRs are difficult to follow that lead to significant questions about their plausibility.[4] Following along, however, the cited errors are that, in the face of Mr. Lebeau's requests, Defendants did not provide the life of the loan transactional history; did not provide the identity and address for the master servicer and current servicer of the mortgage loan; did not include the name of the borrower, the identity of the account, or the property description; did not provide all loss mitigation options; did not provide periodic statements; did not provide information about the contractual status of the mortgage loan account when Wells Fargo obtained servicing rights; failed to provide the loan servicing file; and failed to provide information about the status at the time of default and all default notices sent. Mr. Lebeau alleges actual damages in the form of costs for gasoline to visit his attorney, using electricity to charge his cellphone to call his attorney, for postage and photocopies, and attorney's fees and costs to prosecute this action. He also alleges that he is entitled to statutory damages because Wells Fargo had a pattern or practice of violating RESPA.

---

to submit additional documents to make the facially complete loss mitigation package he submitted complete. Mr. Lebeau sent a NOE on November 4, 2017. Wells Fargo responded on November 15, 2017 and December 19, 2017 but did not provide documents and stated that the request was overly broad.

[4] For example, Mr. Lebeau alleges that he sent NOEs on November 4, 2018, though the Court assumes he means 2017.

8

Wells Fargo disputes Mr. Lebeau's allegations and attaches supporting documents, arguing that it did adequately respond to Mr. Lebeau's March 21, 2017 QWR by answering specific questions and including a copy of his transactional history along with several other documents related to the servicing of his mortgage. ECF No. 31-12. When Mr. Lebeau sent his NOE, Wells Fargo responded, including the transactional history again. Mr. Lebeau sent repeated QWRs, looking for information that would have been in the complete transactional history provided. In future responses, Wells Fargo did cite its previous responsive documents and/or show that the requests were overbroad and duplicative.

The Court finds that the plausible facts surrounding Wells Fargo's conduct show that it did not violate the terms or spirit of RESPA. While RESPA does put a burden on servicers to respond appropriately to a borrower's inquiries, it does not require the servicer to provide the requested information or conduct an investigation if it determines that the request for information is duplicative of information the servicer has already provided the borrower, is irrelevant because it is not "directly related" to the borrower's mortgage loan account, or the request is overbroad or unduly burdensome. 12 C.F.R. § 1024.36(f)(1)(i), (f)(1)(iii), (f)(1)(iv). Nothing in his later QWRS or NOEs could have demonstrated to Wells Fargo that he was trying to correct a legitimate servicing error or looking for a specific response from his servicer about his delinquent account. The Court thus finds that Mr. Lebeau has failed to allege a plausible claim that Wells Fargo's responses to his QWRs and NOEs were in violation of RESPA. The Court need not go any further in its analysis but will

comment on whether Mr. Lebeau's Complaint makes plausible allegations about the essential element of damages.

Wells Fargo also argues that Mr. Lebeau has not sufficiently pleaded actual or statutory damages. To properly allege a claim for actual damages, a plaintiff's harm must have accrued "as a result of the [defendant's] failure" to comply with the Act. *See* 12 U.S.C. § 2605(f). RESPA requires that a plaintiff "present specific evidence to establish a causal link between the financing institution's violation and [his] injuries." *Moore v. Mortg. Elec. Registration Sys., Inc.*, Civil No. 10-cv-241-JL, 2013 WL 1773647, at *3 (D.N.H. Apr. 25, 2013) (quoting *McLean v. GMAC Mortg. Corp.*, 398 Fed. Appx. 467, 471 (11th Cir. 2010)).

Mr. Lebeau alleges that the lack of a response to his QWRs and NOEs resulted in actual damages, specifically the accrual of electricity bills to charge his phone to call his lawyer, gasoline usage to drive his car, and postage and copying costs to send his NOEs. First, Mr. Lebeau does not make clear in his Complaint what the perceived servicing errors are underlying his QWRs. Mr. Lebeau alleges no facts that show a plausible claim that if Wells Fargo responded in any other way, he would gain information about a servicing error or anything else about the servicing of his mortgage loan that would have somehow prevented him from actual injury. And he has not alleged facts sufficient to support a claim that if Wells Fargo had properly responded to his inquiry, he would not have charged his cell phone or driven his car or even that his electricity and gasoline bills were more than they would have been if Wells Fargo had responded in a way he considered appropriate. The Court therefore

10

concludes that, although Mr. Lebeau alleges generally that Wells Fargo's inadequate responses harmed him, he does not allege a sufficient causal connection between any Wells Fargo response and any specific, recoverable damages.

Mr. Lebeau's Complaint also seeks statutory damages, alleging that Wells Fargo's inadequate responses to his QWRs and NOEs are part of "a pattern or practice of noncompliance" with RESPA. 12 U.S.C. § 2605(f)(1)(B). He alleges that it was Wells Fargo's pattern and practice of sending form letters that did not respond to requests or to address deficiencies in responses. His allegations go no further than a repetition of that conclusory statement about each inadequate response, however, and do not set forth either a pattern or a practice. For example, he makes no allegations about Wells Fargo's violations against other borrowers in similar circumstances to show that that is how Wells Fargo approaches all QWRs.

And in his case, the Court finds no plausible allegation of either a pattern or practice. Wells Fargo responded to Mr. Lebeau's first QWR and supplied a complete transactional history of his mortgage loan. Mr. Lebeau made his next five QWRs and NOEs on the same days and Wells Fargo responded to those on November 15th and December 4th. Wells Fargo then responded to Mr. Lebeau's May 2017 QWR and NOE (sent on the same day as the earlier five NOEs) on December 4th and 19th. These three responses–one responsive and two showing that its previous response covered the request, and/or the request was overbroad–are not enough to allege a pattern or practice of violations. Because Mr. Lebeau has not pleaded actual or statutory

damages, his RESPA claim fails. Defendants' motion to dismiss Count II is DISMISSED.

### III. Count III–Violations of the Truth in Lending Act

Mr. Lebeau alleges that Wells Fargo violated the Truth in Lending Act (TILA) by failing to send him monthly statements since November 1, 2016 as required by the 2018 amended version of Regulation Z.[5] At the same time he alleges that he has not received such statements, he alleges that Wells Fargo sent him inaccurate statements, adding unreasonable and unnecessary fees for maintenance, advertising costs and foreclosure fees, and failing to debit eight payments between May 21, 2009 and November 28, 2016.[6] ECF No. 30 ¶¶149-152. These incorrect charges resulted in incorrect calculation of principal and interest on his mortgage account. Wells Fargo responds by asserting that Mr. Lebeau was not entitled to these statements under the pre-2018 amendment Regulation Z because he declared bankruptcy and obtained a discharge of his mortgage debt on September 1, 2009.

TILA requires that servicers provide periodic statements to the obligor. 12 C.F.R § 1026.41 (a)(2). But once a borrower discharges his debt in bankruptcy, his status as obligor disappears. *Id.* at § 1026.41 (e)(5) (servicer exempt from requirements if consumer "on the mortgage loan is a debtor in bankruptcy"); *see Pemental v. Bank of New York Mellon*, C.A. No. 16-483S, 2017 WL 3279015, at *7

---

[5] In one paragraph, Mr. Lebeau alleges that he has not received a statement since November 1, 2016. ECF No. 30 at ¶ 146. In another, he alleges that he has not received a statement since November 14, 2016. *Id.* at ¶ 148.

[6] Mr. Lebeau alleges that he made two identical payments on November 28, 2016. Defendants count these as a single payment, but it is irrelevant whether there were seven or eight payments considering the Court's conclusion on this claim.

(D.R.I. May 10, 2017), *adopted,* C.A. No. 16-483S, 2017 WL 3278872 (D.R.I. Aug. 1, 2017). Mr. Lebeau was not an obligor after the discharge, so Wells Fargo was not bound to send him statements after September 1, 2009. *See id.* Moreover, Mr. Lebeau does not allege, because he cannot, that Regulation Z as amended on April 18, 2018 applies retroactively in his case. There is no caselaw showing this.

And the fact that it appears that Wells Fargo did send a single statement to Mr. Lebeau's counsel post-April 2018 does not affect the Court's analysis of his TILA claim. Even if the Court takes as true Mr. Lebeau's allegation that the amounts in the statement are incorrect, the incorrect amounts in that single statement did not cause him any actual damages because he already disputed the accuracy and propriety of those amounts before receiving the statement in the context of his litigation. And he does not allege that the daily expenses such as gas and postage resulted from receiving that single statement but relate to the litigation of his case generally. *Pemental,* 2017 WL 3279015, at *7-8. As a result, Mr. Lebeau's TILA claim is DISMISSED for failure to state a claim.

IV. Count IV–Breach of the Covenant of Good Faith and Fair Dealing

Mr. Lebeau alleges that Wells Fargo breached the covenant of good faith and fair dealing by charging inaccurate and unreasonable fees and by failing to apply payments he made to the mortgage account. Because of these accounting errors, he alleges that Wells Fargo sent him inaccurate statements, causing him other financial and tax issues. Wells Fargo argues that this claim is barred by res judicata because this issue was or could have been resolved in the state court case.

Mr. Lebeau does not specifically plead a separate breach of contract claim independent of this breach of the covenant of good faith and fair dealing claim. A claim for the breach of the covenant of good faith and fair dealing cannot stand alone without a viable breach of contract claim. *McNulty v. Chip*, 116 A.3d 173, 185 (R.I. 2015). But he does argue that Defendants breached the mortgage contract in his opposition to Defendants' motion and his Complaint contains enough to construe certain allegations as a claim for breach of the mortgage contract. To avoid making a "form over substance" decision, the Court will address these allegations as supporting a breach of contract claim, along with a breach of the covenant of good faith and fair dealing claim.

Mr. Lebeau alleges that Wells Fargo rejected eight[7] payments he made–three in 2009, two in 2010, and three in 2016–in violation of the mortgage. To begin with, "[t]he doctrine of res judicata bars the relitigation of all issues that 'were tried or might have been tried' in an earlier action." *Torrado Architects v. Rhode Island Dep't of Human Servs.*, 102 A.3d 655, 658 (R.I. 2014) (*quoting Huntley v. State*, 63 A.3d 526, 531 (R.I. 2013)). "This doctrine ensures that judicial resources are not wasted on multiple and possibly inconsistent resolutions of the same lawsuit." *Gaudreau v. Blasbalg*, 618 A.2d 1272, 1275 (R.I. 1993). The Court finds that the parties could have raised any breach of contract rooted in alleged payments made in 2009 and 2010 in the 2011 state court complaint and thus the Court will not consider them here.

---

[7] *See* note 6.

And as for the 2016 payments,[8] Mr. Lebeau fails to allege that Wells Fargo had a duty to accept them during his admitted default on the mortgage when, in fact, the mortgage explicitly permits the lender to reject or hold any such payment. *See* ECF No. 31-2 at 9 ("Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. * * * Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.") Because Mr. Lebeau failed to allege a duty owed or a breach of an alleged duty, his Complaint fails to state a claim for a breach of contract. Considering this deficiency, Mr. Lebeau's breach of the covenant of good faith and fair dealing claim in Count IV also fails. His claim sounding in breach of contract is DISMISSED.

V. Count V—Declaratory Judgment

Mr. Lebeau seeks a declaration that New Century did not endorse his note, that the corrective mortgage assignment (made to correct an error in the name of the Trust) is void, the Citigroup Mortgage Loan Trust did not exist, and U.S. Bank was not the trustee for the Citigroup Trust. Citing documents in the record, Wells Fargo clarifies U.S. Bank's status as noteholder and trustee and points to an error in the

---

[8] This analysis applies to all the alleged payments because Mr. Lebeau's mortgage loan was due for November 1, 2008 and the note had not been satisfied. ECF No. 31-2 at 4.

state court record where that court found that Accredited Home Lenders, Inc. endorsed the note in blank when the note itself shows an endorsement by New Century. Wells Fargo also argues that Mr. Lebeau's claim is barred by res judicata.

Res judicata "serves as a bar to a second cause of action where there exists: (1) 'identity of parties'; (2) 'identity of issues'; and (3) 'finality of judgment in an earlier action.'" *Torrado Architects*, 102 A.3d at 658 (quoting *Huntley*, 63 A.3d at 531). Identity of parties is not an issue here so the Court will first consider whether the issues decided in the state court case were identical, litigated and needed to be decided.

Mr. Lebeau's declaratory judgment claim relates to the litany of the succession of mortgage note holders, assignors and assignees of that note, and the identity of the trust owner. The Court should first note that the documents incorporated into the Complaint show that U.S. Bank was the noteholder and trustee and New Century, not some unknown entity, endorsed the note in blank. And the issues ultimately decided in state court grounded in identity and ownership of the note and trust and the validity of assignments are dispositive here as well. In a final judgment on the merits, the state court found that "Defendant has provided sufficient evidence that the Mortgage was transferred to U.S. Bank from New Century Mortgage Corporation via assignment of mortgage" and concluded that U.S. Bank was the note holder and had a right to enforce its terms. ECF No. 46-2 at 4. Because the Court finds that Mr. Lebeau's declaratory judgment claim in state court was based on identical issues between identical parties and that the state court's judgment was final on those

issues, he is precluded from "relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Defendants' motion on this claim before the Court is barred by res judicata and is therefore GRANTED.

CONCLUSION

For all these reasons, Defendants' Motion to Dismiss Mr. Lebeau's Complaint is GRANTED. ECF No. 31.

IT IS SO ORDERED.

*[signature]*

John J. McConnell, Jr.
United States District Judge

March 7, 2019